UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GANNON KEN VAN DYKE,<br><br>Defendant. | 26 Cr. 156 (MMG) |

**GANNON KEN VAN DYKE'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

AGNIFILO INTRATER LLP
140 Broadway, Ste. 4530
New York, NY 10005

By: Zach Intrater
Teny R. Geragos
Jason A. Driscoll
Daniela Manzi

GERAGOS & GERAGOS, APC
256 Fifth Ave., 3rd Fl.
New York, NY 10001

By: Mark J. Geragos
Deanna Paul

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. The Court Should Permit the Defense to Present Evidence and Argument that this Prosecution is Novel and Unprecedented .......... 1

II. Evidence About the Army's February 2026 Policy and the Department of War's October 2026 Memorandum Concerning Use of Non-Public Information on Prediction Market Platforms Is Relevant and Admissible .......... 7

A. The Evidence Is Relevant Under Rule 401 .......... 7

B. The Evidence Is Not Barred By Rule 403 .......... 10

C. The Evidence Is Necessary To Respond To the Government's Evidence .......... 12

III. The Court Should Admit Evidence of "Other" Acts, Performance Reviews, and Reputation Evidence .......... 13

IV. The Court Should Allow Evidence and Argument Related to Disclosure .......... 17

V. The Court Should Allow Disclosure of the Unit's True Name .......... 19

VI. Pseudonyms and Disguises Should Be Permitted .......... 21

VII. Evidence and Argument About "Overclassification" of Documents or Information Should Be Precluded .......... 21

VIII. Evidence and Argument That Polymarket Made Statements Encouraging Users to Use Inside Information .......... 21

IX. Evidence and Argument Regarding Harm Should Be Precluded .......... 22

X. Mr. Van Dyke Does Not Intend to Offer Evidence or Argument About Punishment .......... 22

CONCLUSION .......... 22

## PRELIMINARY STATEMENT

The government's omnibus motion *in limine* requests blanket pretrial rulings excluding broad categories of evidence. Some of the government's requests are reasonable and Gannon Van Dyke does not presently intend to make arguments falling within the scope of certain requests.

But the government is wrong to seek to exclude other categories of evidence. Much of the evidence the government targets is directly relevant to key elements of the offenses charged, including Mr. Van Dyke's good faith and lack of willfulness. Particularly where, as here, the government is pursuing a novel theory of enforcement that is wholly dependent on proving Mr. Van Dyke's conduct was "willful," evidence of Mr. Van Dyke's mental state must be admissible. To the extent the government suggests the evidence is not relevant, it either ignores the governing legal standards or fails to appreciate the purposes for which the evidence will be offered.

A defendant must be provided "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Indeed, the Second Circuit readily reverses convictions where defense evidence relevant to rebutting the government's case was excluded. *See, e.g.*, *United States v. Stewart*, 907 F.3d 677 (2d Cir. 2018); *United States v. Scully*, 877 F.3d 464 (2d Cir. 2017); *United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015). For the reasons further explained below, the bulk of the government's omnibus motion should be denied.

## ARGUMENT

### I. The Court Should Permit The Defense to Present Evidence and Argument that this Prosecution is Novel and Unprecedented

The government seeks to preclude the defense from presenting evidence or arguing that certain aspects of this case are "novel" or "unprecedented." The Court should deny the government's motion. This prosecution's novelty is directly relevant to the specific elements of the charges. It is thus appropriate for the jury to consider. For example, this is the first ever case

in which the government has taken the position that betting on prediction market event contracts—an admittedly "new phenomenon"[1]—involves a "swap" transaction subject to the CEA. Evidence this application of the CEA is novel and unprecedented will serve to rebut the government's burden to prove that Mr. Van Dyke acted *willfully*.[2] Such evidence would further tend to rebut the government's argument that Mr. Van Dyke knew or must have known his actions were deceptive and reflected an intent to defraud. Importantly, Mr. Van Dyke does not intend to make arguments at trial concerning "the Government's motives for the prosecution," Dkt.51 at 18, or argue that the general insider trading theory of criminality is somehow new. The government sets these possibilities up as straw men. They have nothing to do with the point here—it is not the government's intent and motives that Mr. Van Dyke needs to be able to discuss, but his own. The relevance of this case's novelty is that it corroborates Mr. Van Dyke's lack of *mens rea*.

Such evidence is clearly relevant. Federal Rule of Evidence 401's relevance standard "is a low threshold, easily satisfied." *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019). "To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010); *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003) ("Nonconclusive evidence should still be admitted if it makes a proposition more probable than not." (internal quotation marks omitted)). "[S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006).

---

[1] U.S. Soldier Charged With Using Classified Information To Profit From Prediction Market Bets (Apr. 23, 2026), https://www.justice.gov/opa/pr/us-soldier-charged-using-classified-information-profit-prediction-market-bets.

[2] Mr. Van Dyke reserves the right to introduce evidence that he was not aware of any CEA statute or rule that would restrict his trading and argue that the novelty of this prosecution corroborates his lack of knowledge. *See* 7 U.S.C. § 13(a)(5) ("no person shall be subject to imprisonment under this paragraph for the violation of any rule or regulation if such person proves that he had no knowledge of such rule or regulation").

Evidence is particularly relevant when it might bear on a defendant's *mens rea* and good faith. "Since [good faith] may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh its relevance." *United States v. Litvak*, 808 F.3d 160, 190 (2d Cir. 2015) (reversing exclusion of evidence). "Where evidence of a defendant's innocent state of mind, critical to a fair adjudication of criminal charges, is excluded, [the Second Circuit] ha[s] not hesitated to order a new trial." *United States v. Biaggi*, 909 F.2d 662, 692 (2d Cir. 1990).

The chain of inferences demonstrating relevance here is straightforward. "[T]o establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)); *United States v. Kosinski*, 976 F.3d 135, 154 (2d Cir. 2020); *United States v. Kukushkin*, 61 F.4th 327, 332 (2d Cir. 2023); *United States ex rel. Hart v. McKesson Corp.*, 96 F.4th 145, 154 (2d Cir. 2024). The government has never before brought charges under the CEA based on conduct involving prediction market event contracts. Nor has the government ever previously taken the position that betting on prediction market event contracts involves a "swap" transaction subject to the CEA. And as outlined in Mr. Van Dyke's motion to dismiss, all branches of government have acknowledged industry doubt and confusion as to whether certain types of event contracts constitute "swaps" under the CEA. *See, e.g.*, Dkt.23.

This is relevant background and context for the jury to consider because it "has a[] tendency to make" the government's willfulness arguments "less probable" and Mr. Van Dyke's *lack of* knowledge and willfulness "more … probable." Fed. R. Evid. 401(a). *See United States v. Terry*,

No. 24 Cr. 427 (LGS), 2026 WL 3016313, at *2 (S.D.N.Y. Oct. 7, 2026) (evidence of novelty of case can be "probative of whether Defendant acted willfully."). In other words, the fact the government's charging theory involves the attempted application of law to an admittedly "new phenomenon"[3]—prediction market wagers the government seeks to characterize as "swaps"—buttresses Mr. Van Dyke's defense. That is all that is required to demonstrate relevance.

The *absence* of enforcement actions and criminal prosecutions targeting certain conduct clearly makes a claim of good faith more probable, and the Second Circuit has repeatedly endorsed analogous reasoning. In *United States v. Litvak*, for example, the defendant sought to introduce evidence his supervisors "regularly approved of conduct identical to that with which he was charged." 808 F.3d at 189. The trial court characterized the proffered evidence as improperly "suggest[ing] that everybody did it and therefore it isn't illegal." *Id.* at 189-90. But the Second Circuit reversed, concluding the evidence "would support Litvak's attempt to introduce a reasonable doubt as to his intent to defraud, *i.e.,* that he held an honest belief that his conduct was not improper or unlawful, a belief the jury may have found more plausible" given the evidence. 808 F.3d at 189-90.[4] Here, not only has one ever been charged criminally before this case, but the military did not even have a policy prohibiting prediction market betting before Mr. Van Dyke placed his wagers.

Also instructive is *United States v. Schultz*, where the court held that testimony from the defendant's employees and colleagues as to their understanding of the law was admissible to prove

[3] U.S. Soldier Charged With Using Classified Information To Profit From Prediction Market Bets (Apr. 23, 2026), https://www.justice.gov/opa/pr/us-soldier-charged-using-classified-information-profit-prediction-market-bets.

[4] The government might attempt to argue that such evidence is irrelevant unless Mr. Van Dyke can demonstrate he had personal knowledge of the evidence, but *Litvak* rejected any such requirement and held that good faith and lack of willfulness can be demonstrated circumstantially. *See Litvak*, 808 F.3d at 189, n.35 (rejecting district court's reasoning that "[i]f it is something Mr. [Litvak] didn't know, then it can't go to a state of mind"). Although *Litvak* observed such indirect evidence is "less probative" of a defendant's intent than evidence "in which he was directly involved," the Circuit still concluded the trial court "exceeded its allowable discretion in concluding [the evidence] was not relevant under the low threshold set forth by Federal Rule of Evidence 401." *Id.* at 190.

what "someone with the defendant's … background … probably would know." 333 F.3d at 416. Just as that evidence went "directly to the plausibility of [a *mens rea*] defense," *id.*, evidence that the prosecution is novel and unprecedented goes directly to the plausibility of Mr. Van Dyke's good faith and his argument that he lacked any knowledge his event contract wagers could constitute "swap" transactions subject to the CEA. The Second Circuit discussed similar evidence in *United States v. Mahaffy*, where it found probative and material testimony from a compliance officer at the defendants' company stating he "never knew of any rule" prohibiting the at-issue conduct. 693 F.3d 113, 128 (2d Cir. 2012). Again, such evidence—or the absence of evidence that conduct is prohibited—"harmonize with [the] defendant's theories" and "[is] material and favorable to the defense," and therefore relevant. *Id.* at 133.

The government's cited cases do not concern comparable evidence and are not relevant to the arguments Mr. Van Dyke in fact seeks to make. The government cites *United States v. Chastain*, No. 22 Cr. 305 (JMF) (ECF No. 90), but the argument under consideration there was different. There, the charges were limited to wire fraud and money laundering, and the only issue was whether the purported misuse of employee information constituted property within the meaning of the wire fraud statute. The government pursued no novel theory like the unprecedented "swaps" theory at issue in this case. For that reason, in *Chastain* Judge Furman found it "debatable whether th[e] case [wa]s even 'novel' or 'unprecedented.'" *Id.* at 4.

The evidence here is not only "relevant" within the meaning of Rule 401—there are also important constitutional principles counseling admissibility. As the Supreme Court has instructed, "forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." *Cheek v. United States*, 498 U.S. 192, 203 (1991). When one party offers proof of a point, evidence is especially important for the

opposing party as a matter of basic adversarial fairness. *See United States v. Ortiz-Rengifo*, 832 F.2d 722, 726 (2d Cir. 1987) ("[W]e may look to [one party's] evidence to determine whether the [other party's] evidence [is] relevant."). Thus, when one party introduces evidence to prove a point, "[c]ounterproof is admissible if it contradicts" that point. 3 Mueller & Kirkpatrick, Federal Evidence § 6:89 (4th ed. & 2023 update); *see also Biaggi*, 909 F.2d at 691-92 (where prosecution introduces evidence showing consciousness of guilt, defense evidence showing consciousness of innocence must be admitted); *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) (holding same regarding evidence disproving fraudulent intent).

The government will no doubt argue at trial that Mr. Van Dyke's good faith defense is a sham. It will argue the conduct was clearly illegal, that Mr. Van Dyke knew it, and that governing law obviously prohibited the conduct. Mr. Van Dyke is permitted to put the government to its proof by presenting evidence and argument that the conduct at issue has not clearly been subject to any longstanding and obvious criminal enforcement actions or prohibitions—or any previous actions or prosecutions at all.

The government's Rule 403 arguments also fail. Contrary to the government's claims, such evidence and argument would not require "time-wasting sideshows" regarding "the history of insider trading prosecutions," nor lead the jury into believing this is a "referendum on prediction markets writ large." Dkt.51 at 19. The evidence is simple and confined—the government has never previously prosecuted a defendant under the CEA or fraud statutes for betting on event contracts on prediction markets under the theory such contracts constitute "swaps." Indeed, there is "no realistic threat" whatsoever—never mind a "substantial" danger—that this evidence and argument would confuse the issues, mislead the jury, or waste time under Rule 403. *United States v. Blum*, 62 F.3d 63, 68 (2d Cir. 1995). What the evidence and arguments would do, however, is

equip the jury with material, probative evidence as to whether Mr. Van Dyke acted willfully, knowingly, and with an intent to defraud. Such evidence is "highly probative" of the "central issue in the case," and should not be excluded. *Litvak*, 808 F.3d at 182; *United States v. White*, 692 F.3d 235, 247 (2d Cir. 2012) ("Rule 403 favors admissibility.").

## II. <u>Evidence About the Army's February 2026 Policy[5] and the Department of War's October 2026 Memorandum[6] Concerning Use of Non-Public Information on Prediction Market Platforms Is Relevant and Admissible</u>

The government argues Mr. Van Dyke "should be precluded from offering evidence of policy and memoranda that post-date the offense conduct" to suggest existing policies did not clearly prohibit the at-issue conduct or put Mr. Van Dyke on notice that his conduct was prohibited. Dkt.51 at 21. The government's argument is meritless. Evidence the government subsequently implemented its policies in an attempt to explicitly prohibit the at-issue conduct is obviously relevant to the jury's assessment of Mr. Van Dyke's lack of willfulness and intent to defraud. The evidence is also relevant to whether the government took the required "affirmative steps" to keep the at-issue information confidential. *Mahaffy*, 693 F.3d at 135 n.14. Finally, the evidence is necessary context to rebut arguments we anticipate the government will make concerning Mr. Van Dyke's search, "how do you hide your identity polymarket," three days after the army issued the Polymarket policy.[7]

### A. The Evidence Is Relevant Under Rule 401

The government made an identical motion *in limine* in the *Chastain* case. It was rejected. For good reason: Changes in policy can clearly "shed light on the content and meaning of the policies that were in place at the time of [the] conduct." *Chastain*, ECF No. 90, at 3 (citing *Foley*

---

[5] The Army's February 2026 Policy is attached as **Exhibit A**.
[6] The Department of War's October 2026 Memorandum is attached as **Exhibit B**.
[7] The government has not produced its exhibits or exhibit list to the defense. We expect, but do not know, whether this will be a government exhibit.

*v. City of Lowell*, 948 F.2d 10, 14 (1st Cir. 1991) (holding that "actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident"); *United States v. Chastain*, 145 F.4th 282, 299 (2d Cir. 2025) (noting Chastain was permitted to question alleged victim-company's co-founders about the clarity of agreements (or lack thereof), including subsequent changes in policy).

The relevance of subsequent changes in policy is plain enough. The changes are probative of whether the prior policies clearly encompassed the at-issue conduct and whether the prior policies would have fairly notified employees. If one day an employer says x, and then separately says y, that is relevant to whether x included y. It is also relevant to whether an employee would have understood x to include y. The policy additions and changes—and anticipated testimony of witnesses concerning the changes—could give the jury reason to believe the prior policies did not prohibit the at-issue conduct. This evidence is relevant for the jury's determination of whether prior policies gave notice such that Mr. Van Dyke knew his actions violated the law. This question—Mr. Van Dyke's willfulness—is the central question of Counts 1–3. Whether policies were clear enough and/or failed to adequately put soldiers on notice regarding the alleged prohibition – as demonstrated by the issuance of specific policies later – is relevant evidence.

The changes are clearly relevant in corroborating Mr. Van Dyke's defense of lack of willfulness, knowledge, and intent to defraud. Prior to Mr. Van Dyke's bets and the military's adoption of new, more specific policies, no policy explicitly concerned prediction market event contracts or soldiers' wagers on prediction markets. The government will argue (as it has in its motion) that existing policies clearly covered prediction market wagers. But Mr. Van Dyke is therefore entitled to rebut that argument by demonstrating that if the government clearly intended to notify him that such prediction market wagers were illegal, it would have stated so explicitly—

as it later did. He is also entitled to testify that *his understanding* at the time was that if such conduct was prohibited, the government would have stated so explicitly, and introduce the subsequent policies to demonstrate that was a real possibility and corroborate his belief. Such evidence is, again, "highly probative" of the "central issue in the case." *Litvak*, 808 F.3d at 182.

The government is wrong to suggest that "[s]ubsequent policy notices by U.S. Government bodies do not bear on th[e]se points." Dkt.51 at 22. The government argues, for example, "that a homeowner may buy a new home security system after a burglary does that mean that the old house alarm did not exist." Dkt.51 at 24. This analogy is inapt. The purchase of a new security system could, for example, be probative of the fact that the previous system lacked a necessary feature the homeowner thought important to add to their security system. Or perhaps the alarm system sticker on the front door was not big enough to be noticed by would be burglars, but a new big sign—larger, illuminated, and more prominently displayed—would adequately serve its function. The government's arguments overlook obvious chains of probative inferences and should be rejected.

The government further posits that the policies are categorically irrelevant because they were adopted after Mr. Van Dyke made his wagers, but courts do not exclude evidence as irrelevant simply because the evidence post-dates the conduct at issue. *See, e.g.*, *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990) ("[r]elevancy cannot be reduced to mere chronology"); *United States v. Mostafa*, 16 F. Supp. 3d 236, 268 (S.D.N.Y. 2014) ("[t]he fact that evidence predates or postdates the charged conduct does not alone predetermine its relevance or admissibility" (internal citations omitted)). To the contrary, sometimes it is *the change itself* that is relevant because it reveals something about the prior state of play and the parties' likely understanding, as here.[8]

[8] The government reaches all the way back to 1892 to cite a civil negligence case, *Columbia & P. S. R. Co. v. Hawthorne*, 144 U.S. 202 (1892). But even 134 years later, *Hawthorne* is still irrelevant. That was a civil negligence

The evidence is also separately relevant to whether the government can satisfy its burden under *Carpenter* on the wire fraud count. "*Carpenter* requires proof that the information was both considered and treated by an employer in a way that maintained the employer's exclusive right to the information." *Mahaffy*, 693 F.3d at 135 n.14.[9] Among the possibly relevant factors jurors might consider on this question is whether the employer maintains "written company policies, employee training, measures the employer has taken to guard the information's secrecy, …. and the ways in which other employees may access and use the information." *Id.* "If employers 'consider' information to be confidential but do not really take affirmative steps to treat it as such and maintain exclusivity, *Carpenter* is not satisfied." *Id.* The employer's adopting more specific policies after the fact reveals to the jury the extent to which the employer took (or did not take) such "affirmative steps" at the time of the conduct. It also is probative of how the employer "consider[ed]" the information. *Id.*

**B. The Evidence Is Not Barred By Rule 403**

The government's Rule 403 arguments fare no better. The government's argument boils down to a protest that it will be prejudiced by evidence that clearly refutes its theory of the case. That is no justification for excluding the evidence. Indeed, it fails to cite any "unfair prejudice" or risk of confusion at all—and certainly no such risks that "substantially outweigh" the probative value of the evidence. Fed. R. Evid. 403.

---

case outlining policy considerations similar to those eventually adopted in Federal Rule of Evidence 407 concerning a *defendant's* subsequent remedial measures. But "courts have unanimously held that Rule 407 does not bar evidence of subsequent remedial measures by *non-defendants*"—like the government here. *Lion Oil Trading & Transp., Inc. v. Statoil Mktg. & Trading (US) Inc.*, No. 08 Civ. 11315 WHP, 2011 WL 855876, at *7 (S.D.N.Y. Feb. 28, 2011) (emphasis added). Nor does the evidence implicate any of the prohibited purposes under Rule 407, even if the rule did apply.

[9] In this respect, the government is wrong when arguing "the jury is not tasked with determining the Army's or Department of War's intent for announcing later policies." Dkt.51 at 25. The government's intent vis-à-vis the information will be squarely at issue in this case, per *Carpenter*. And Mr. Van Dyke is permitted to rebut the government's arguments concerning the Army's and Department of War's intent when issuing policies.

The government claims there is a "risk of unfair prejudice" if Mr. Van Dyke were to cite the "more specific" policies "in subsequently issued guidance" to argue "that such conduct had not been [previously] prohibited," but its argument misconstrues the relevant inquiry under Rule 403. Dkt.51 at 22; *see also id.* at 25. Unfair prejudice means an undue tendency to suggest decision on an improper basis or "a tendency … to prove some adverse fact not properly in issue." *Quattrone*, 441 F.3d at 186. Evidence does not create "unfair prejudice" just because it is "damaging to [a party's] case." *United States v. Siegel*, 717 F.2d 9, 17 (2d Cir. 1983). The subsequent policies are of course damaging to the government's case because they underscore and highlight that the policies in existence when Mr. Van Dyke made his wagers were not necessarily clear or sufficient to notify Mr. Van Dyke his conduct was unlawful. But it is that probative, *relevant* feature of the evidence—"the rationale [justifying] its admission," *Quattrone*, 441 F.3d at 186—that hurts the government, not any "unfair" prejudice or inflammatory, improper considerations. The evidence creates no such unfair risks, and the government has not identified any.[10]

The government's other Rule 403 arguments are similarly unpersuasive. The jury will not be confused as to which policies were in fact in place at the time of the conduct and which policies were subsequently adopted. It will easily comprehend the series of events, which are basic: the government had certain policies at the time of the conduct and later issued two new policies. Nor will jurors be confused as to what law governed the defendant's conduct as the Court will instruct the jury accordingly—instructing the jury that it is to follow only the Court's instructions regarding the law, and not any policies in place of the law.

[10] The government takes it for granted that the previous policies clearly prohibited Mr. Van Dyke's conduct, but that is a question of fact for the jury that the government must first prove beyond a reasonable doubt. It is not something the government can merely assume here when making its motion, and the Court should not similarly assume resolution of this fact issue when considering the government's motion.

### C. The Evidence Is Necessary to Respond to the Government's Evidence

Finally, the evidence is necessary context to rebut arguments we anticipate the government will make concerning Mr. Van Dyke's search, "how do you hide your identity polymarket," three days after the Polymarket policy was issued. The government has produced documents that it will no doubt cite as evidence of consciousness of guilt. Specifically, in February 2026, immediately after the Army's issuance of the new February 2026 Policy, Mr. Van Dyke searched "how do you hide your identity polymarket" in the web browser. The government will directly place the new policies in issue by citing Mr. Van Dyke's subsequent conduct as evidence of his guilt, but the jury cannot accurately assess the weight of such evidence without considering the specific event to which Mr. Van Dyke was responding—the issuance of the new policy.

The relevance and prejudice of evidence is not to be "viewed as an island" but must be assessed by "tak[ing] account of the full evidentiary context of the case." *Old Chief v. United States*, 519 U.S. 172, 182 (1997). And the "relative significance of … facts … [is] for the jury to decide" "in light of the opposing theories advanced by the two sides and the evidence that each side marshal[s] to support them." *Gramins*, 939 F.3d at 453, 446. Thus, if the government puts the evidence directly in issue by offering evidence such as Mr. Van Dyke's subsequent search, it would be fundamentally unfair to deprive Mr. Van Dyke of his evidentiary and constitutional rights to confront that evidence with evidence and argument of his own.

Thus, while the evidence is already sufficiently relevant and admissible for the reasons previously described, and should be admitted in any case, the evidence is also essential and admissible to rebut more specific arguments the government will likely make.

* * * *

As demonstrated, the new policy evidence clearly meets and surpasses the low threshold required to establish relevancy under Rule 401 and satisfies Rule 403. The evidence should be admitted accordingly.

**III. <u>The Court Should Admit Evidence of "Other" Acts, Performance Reviews, and Reputation Evidence</u>**

The government seeks to preclude evidence and argument concerning "any prior good conduct, including those derived from [Mr. Van Dyke]'s career in the military," including "attention to duty, commitment to public service, bravery, accolades, commendations, performance reviews, and other records." Dkt.51 at 11, 13. It asserts that Mr. Van Dyke may not "present evidence or argument concerning his prior commission of 'good acts,' including his military service, or to offer evidence of his non-criminal activities to disprove his guilt of the crimes charged." *Id.* at 12. The Court should deny this motion.

Although the government is correct that good acts evidence is usually inadmissible because its relevance often turns on impermissible propensity inferences, evidence of "other acts" is admissible if offered "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Courts routinely allow defendants to introduce biographical and career evidence if offered to negate allegations of intent. Similarly, courts allow opinion evidence about a defendant's reputation—which is not subject to Rule 404(b)—to rebut allegations related to a pertinent character trait.

*First*, evidence of Mr. Van Dyke's history with the unit is relevant background information that will aid the jury's understanding of the events underlying the alleged conduct and Mr. Van Dyke as a person. Courts routinely allow criminal defendants to introduce biographical evidence as background. *See United States v. Blackwell,* 853 F.2d 86, 88 (2d Cir. 1988) (testimony about

defendant's military service, college education, and other history was admissible as "background" evidence, which "told the jury something about the defendant as a person, and his experience in life"); *United States v. Inniss*, No. 18 Cr. 134 (KAM), 2019 WL 6999912, at *8-9 (E.D.N.Y. Dec. 20, 2019) (denying the government's motion to exclude evidence of the defendant's "family background, health condition, age, conditions of pretrial release, or any other personal factor unconnected to guilt"); *United States v. Adelekan*, 567 F. Supp. 3d 459, 471 (S.D.N.Y. 2021) (denying the government's motion to preclude defendants from offering evidence or argument concerning their family backgrounds and employment histories and from mentioning such subjects in their opening statements); *United States v. Kosinski*, No. 16 Cr. 148 (VLB), 2017 WL 4953902, at *6 (D. Conn. Oct. 31, 2017) (denying government's motion to exclude general personal background such as defendant's age, basic information about his employment, and family background); *United States v. Calonge*, No. 20 Cr. 523 (GHW), ECF No. 42 (S.D.N.Y. 2021) (denying "Government's motion in limine requesting that the Court exclude all evidence or argument regarding the Defendant's family background, health, age, or any other similar factors"); Fed. R. Evid. 401, advisory committee's note on 1972 proposed rules ("Evidence which is essentially background in nature . . . is universally offered and admitted as an aid to understanding.").

*Second*, evidence of Mr. Van Dyke's professional background is relevant to demonstrate that Mr. Van Dyke lacked the alleged intent to defraud. Although the government erroneously refers to this as "good act" evidence, courts allow defendants to introduce good act evidence when "th[e] evidence of good conduct is relevant to the charged conduct ... or may be necessary to prevent misleading the jury." *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015). Indeed, "good act" evidence is relevant "where the evidence of

'good acts' would undermine the underlying theory of a criminal prosecution." *United States v. Balboa*, No. 12 Cr. 196 (PAC), 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013) (quoting *United States v. Damti*, 109 F. App'x 454, 455-56 (2d Cir. 2004) (other act evidence that tended to rebut prosecution's motive theory was admissible)). More broadly, *other* act evidence is admissible to demonstrate good faith and lack of fraudulent intent. *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F. Supp. 2d 698, 707-08 (S.D.N.Y. 2011); *United States v. Posner*, No. 87 Cr. 59, 1987 WL 17150, at *4 (N.D. Ill. Sept. 15, 1987) ("prior lawful conduct can be relevant to questions of intent or other issues besides mere conformity with prior conduct").

Evidence and argument regarding other operations in which Mr. Van Dyke participated are necessary to contextualize how Mr. Van Dyke thought about the information he had at the time of the alleged bets, including with respect to [redacted] That is directly relevant to whether Mr. Van Dyke believed he possessed material, nonpublic information and whether he engaged in the conduct willfully with intent to defraud. And although the government seeks to preclude Mr. Van Dyke's "accolades, commendations, [and] performance reviews," Dkt.51 at 13, certain of [redacted] directly undercut the government's theory that Mr. Van Dyke "tried to conceal his unlawful use of classified U.S. Government information by attempting to obscure the source of his unlawful proceeds and to disguise his connection to the accounts linked to the illicit trades." Indictment ¶1. For instance, the evidence will show that [redacted] evidence that bears directly on willfulness. Such "other act" evidence is admissible for these purposes. *See Terry*, 2026 WL 3016313, at *4 (denying

government's motion to preclude evidence of defendant's "prior good acts or purported commendable service with the U.S. government" where evidence was offered "to demonstrate [the defendant's] policy views, expertise and public service and to provide context for the Government's intended portrayal of Defendant's career, all as relevant to the issue of whether she acted at the direction of a foreign principal").

In addition, [redacted]. This evidence shows that he had a strong motive to comply with military policies, continue performing at a superior level, and refrain from violating the law, lest he lose his job and lifelong pension. The Second Circuit has held that such "evidence of motive, or the lack thereof, is a factor that a jury may weigh in considering whether the totality of the circumstances permits it to infer guilty knowledge and intent beyond a reasonable doubt." *United States v. MacPherson*, 424 F.3d 183, 185 n.2 (2d Cir. 2005).

*Third*, though the government claims otherwise, Mr. Van Dyke may introduce evidence to prove a character trait in issue. Fed. R. Evid. 404(a)(2)(A) ("a defendant may offer evidence of the defendant's pertinent trait"); Fed. R. Evid. 405(a) ("When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion."). The government has put Mr. Van Dyke's loyalty to the U.S. Army and trustworthiness in issue by alleging that he "breached his duty of trust and confidence" to the military, engaged in a "course of business which operates and would operate as a fraud and deceit" and "by means of deception." Indictment ¶12; Dkt.25 at 36. Because feigned loyalty and deceit are essential elements of insider trading, Mr. Van Dyke is entitled to introduce character evidence showing that he is an honest and loyal servant to the U.S. military. *United*

*States v. Riley*, 638 F. App'x 56, 64 (2d Cir. 2016) (summary order) (affirming admission of character testimony about the defendant's "reputation for truthfulness, honesty, and 'secret keeping,'" as well as general testimony about the "type of work [the defendant] had done with the Central Intelligence Agency and to his responsibility for handling classified information"); *United States v. O'Hagan*, 521 U.S. 642, 652 (1997) ("[T]he misappropriation theory premises liability on a fiduciary-turned-trader's deception of those who entrusted him with access to confidential information.").

*United States v. Smirnov* is instructive. No. 2:24 Cr. 91, 2024 WL 4893937 (C.D. Cal. Nov. 26, 2024). There, the defendant sought to introduce evidence of his loyalty and patriotism where the government intended to offer evidence that he "lied and deceived his FBI handler when he falsely reported the facts charged in the indictment," and therefore "betrayed the trust and confidence the FBI had bestowed on him." *Id.* at *1. The court held that the reputation or opinion evidence that the defendant sought to introduce related to a "pertinent trait" under Rule 404(a) and was admissible under Rule 405(a), finding that "[i]f Defendant is truly loyal and patriotic, a jury could find that makes it less likely that he would lie to the federal government." *Id.* at *6. Here too, evidence of Mr. Van Dyke's [redacted] loyal service is admissible show the unlikelihood that he would intentionally feign fidelity to the army and deceive it.

## IV. <u>The Court Should Allow Evidence and Argument Related to Disclosure</u>

The government next seeks to preclude evidence and argument that Mr. Van Dyke complied with his NDAs and that his trades did not amount to a disclosure of classified information. Dkt.51 at 14-17. It intends to offer the NDAs to prove Mr. Van Dyke's duty of trust and confidence and establish Mr. Van Dyke's knowledge of the confidentiality of relevant information. It argues that "the defendant owed a fiduciary duty of loyalty and confidentiality to his employer, and he signed multiple non-disclosure agreements concerning his work for the government. All of these

obligations were binding on the defendant during the period of the charged conduct—from December 2025 through January 2026." Dkt.51 at 16.

The government thus seeks to use the NDAs as both a sword to prove Mr. Van Dyke's knowledge of his duty and the treatment of information as confidential and as a shield against arguments showing Mr. Van Dyke's lack of notice, lack of intent to defraud the U.S. Army, and lack of willfulness. But the government's proposed use of the NDAs *itself* makes Mr. Van Dyke's contemporaneous understanding of those agreements relevant. If the government chooses to elicit that the NDAs were binding on Mr. Van Dyke, he must be afforded the opportunity to establish his understanding of the scope of the agreements, his belief about their consistency with the law, and his good faith intent to comply, all of which are relevant to the jury's assessment of knowledge, intent, and willfulness. Second Circuit precedent is on point. *See United States v. Napout*, 963 F.3d 163, 185 (2d Cir. 2020) (in foreign bribery case, a bad faith determination turned on "whether the[ defendants] had understood that their accepting bribes violated their duties to FIFA and CONMEBOL under the organizations' codes of ethics"); *United States v. Rigas*, 490 F.3d 208, 220 (2d Cir. 2007) (in securities fraud case, "compliance with GAAP" was relevant "as evidence of whether a defendant acted in good faith").

Further, the defense must have the ability to contextualize the agreements, which refer to numerous violations of law arising from unauthorized disclosures of purported sensitive and classified information. *See, e.g.*, NDA dated September 11, 2018, at 1 ("I have been advised that any unauthorized disclosure of SCI by me may constitute violations of United States criminal laws, including provisions of Sections 793, 794, 798, and 952, Title 18, United States Code, and of Section 783(b), Title 50, United States Code."). Presenting the jury with evidence related to disclosure without showing Mr. Van Dyke's good faith understanding that "use" did not constitute

"disclosure" invites the jury to assume that Mr. Van Dyke knowingly breached the agreements and therefore violated the law. *Cf. SEC v. Cuban*, 634 F. Supp. 2d 713, 725 (N.D. Tex. 2009) ("With respect to confidential information, nondisclosure and non-use are logically distinct. A person who receives material, nonpublic information may in fact preserve the confidentiality of that information while simultaneously using it for his own gain."), *vacated and remanded on other grounds*, 620 F.3d 551 (5th Cir. 2010).

## V. <u>The Court Should Allow Disclosure of the Unit's True Name</u>

The defense agrees that there are many important national security interests that could be implicated by the disclosure of specific information regarding Mr. Van Dyke's unit. But to stand on ceremony regarding the very name of the unit itself is not supported by the law or by common sense. The government argues that the Court should implement measures to protect the true name of the unit because it, "to date, has not been made public by the U.S. Government." Dkt.51 at 4. [redacted]

---

[redacted]

[redacted]

---

[redacted]

[redacted]

## VI. Pseudonyms and Disguises Should Be Permitted

Mr. Van Dyke does not object to certain military witnesses testifying with pseudonyms and light disguises, so long as any military witnesses he intends to call on his behalf are afforded the same opportunity. The government's motion to allow the use of pseudonyms and disguises should therefore be denied as moot.

## VII. Evidence and Argument About "Overclassification" of Documents or Information Should Be Precluded

Because Mr. Van Dyke does not intend to argue that certain information was "overclassified," the government's motion to preclude such argument should be denied as moot.

## VIII. Evidence and Argument That Polymarket Made Statements Encouraging Users to Use Inside Information

Mr. Van Dyke does not intend to affirmatively offer evidence of any statements Polymarket made encouraging insider trading. However, Mr. Van Dyke reserves the right to offer such evidence if Professor Shams is permitted to testify that the at-issue trades "suggest this account owner may have been more knowledgeable than the average market participant about the

---

[redacted]

probabilities of the real-wor[l]d outcomes," or if Professor Hendershott is permitted to testify about the hedging utility of the at-issue trades. Polymarket's public statements regarding the integrity of its platform clearly bear on Hendershott's opinion that market participants might have had an incentive to use the platform for legitimate economic hedging.

## IX. Evidence and Argument Regarding Harm Should Be Precluded

Because Mr. Van Dyke does not seek to offer evidence or argument that his conduct did not cause harm unless the government first offers evidence that Mr. Van Dyke's conduct caused harm, the government's motion to preclude should be denied as moot.

## X. Mr. Van Dyke Does Not Intend to Offer Evidence or Argument About Punishment

Because Mr. Van Dyke does not seek to offer evidence or argument about his potential punishment, the government's motion to preclude should be denied as moot.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motions *in limine*.

Dated: November 9, 2026
New York, NY

Respectfully submitted,

Zach Intrater
Teny R. Geragos
Jason A. Driscoll
Daniela Manzi
AGNIFILO INTRATER LLP
140 Broadway, Ste. 4530
New York, NY 10005

Mark J. Geragos
Deanna Paul
GERAGOS & GERAGOS, APC
256 Fifth Ave., 3rd Fl.
New York, NY 10001

# CERTIFICATION

The undersigned hereby certifies that Gannon Van Dyke's Memorandum of Law in Opposition to the Government's motions *in limine* complies with Local Rule 7.1. The word count, exclusive of the caption, tables, and signature block is 7,278 words according to the word-processing system used to prepare the document.

Dated: November 9, 2026
New York, NY

Respectfully,

_______________________
Zach Intrater
Teny R. Geragos
Jason A. Driscoll
Daniela Manzi
AGNIFILO INTRATER LLP
140 Broadway, Ste. 4530
New York, NY 10005

Mark J. Geragos
Deanna Paul
GERAGOS & GERAGOS, APC
256 Fifth Ave., 3rd Fl.
New York, NY 10001