**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

November 20, 2026

**BY ECF**

The Honorable Margaret M. Garnett
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Gannon Ken Van Dyke*, 26 Cr. 156 (MMG)**

Dear Judge Garnett:

The Government respectfully writes in opposition to the jury instructions proposed by defendant Gannon Van Dyke. (Dkt. No. 59). Several of the defendant's proposed instructions are contrary to governing law and find no support in controlling Second Circuit precedent. The Government's proposed jury instructions, by contrast, accurately reflect the applicable law, are supported by binding authority, and are consistent with jury instructions routinely delivered in insider trading cases in this District. The Government therefore requests that the Court decline to give the defendant's proposed instructions where they depart from governing law and instead adopt the Government's proposed jury instructions in full.

The Government specifically objects to the defendant's proposed jury instructions as follows:

**Count Three – Commodities Fraud:**

The Government respectfully submits that the Court should instruct the jury on the elements of commodities fraud using the three-element formulation that is routinely used in insider trading cases. (Dkt. No. 62 at 5-15). Additionally, in defining the first element of commodities fraud, the Court should focus the jury on the type of fraudulent scheme at issue by identifying the particular type of fraud—insider trading—and defining the conduct. The Government also objects to the fourth element of the defendant's proposed instruction, which finds no support in the text of 7 U.S.C. § 9(1). The statute requires proof that the alleged deceptive conduct occurred "in connection with" a swap; it does not require the Government to prove, as a separate element, that the defendant "used, or caused to be used, any means or instrumentality of transportation or communication in interstate commerce, or the mails." (*See* Dkt. No. 59 at 8, 15). The defendant appears to import this requirement from securities-fraud jurisprudence, but cites no authority holding that such a separate jurisdictional element applies to liability under 7 U.S.C. § 9(1). Indeed, the instructions in *United States v. Eisenberg*, No. 23 Cr. 10 (S.D.N.Y. Apr. 8, 2024), which the

defendant cites as authority for his proposed instruction, used a three-element formulation for commodities fraud without reference to an interstate commerce element.

The Government objects to the defendant's proposed instruction regarding the duty of trust and confidence for the following reasons. (Dkt. No. 59 at 9-10). First, while it is correct that "[t]he government alleges the defendant had a duty of trust and confidence to the United States military by virtue of being an employee," (Dkt. No. 59 at 9), an employment relationship is not necessary to establish such a duty, and there are facts beyond the defendant's employment with the military from which the jury could find the existence of a duty of trust and confidence, including the nature of the relationship between the defendant and the military and whether it involved the type of reliance, trust, and understanding that confidential information will be kept secret; the defendant's position and responsibilities; any confidentiality policies, agreements, or instructions; and the manner in which the information was provided. (Dkt. No. 62 at 7). Second, the defendant's proposed instruction incorrectly suggests that whether a duty of trust and confidence existed may turn on the mutual understanding that confidential information shared pursuant to that relationship "would not be used in connection with the purchase or sale of 'swaps.'" (Dkt. No. 59 at 10). The defendant cites no authority for this requirement, and the Government is aware of none. The duty of trust and confidence prohibits an insider from trading for a personal benefit while knowingly possessing material nonpublic information. The existence of the duty does not depend on a mutual understanding of the obligations it imposes.

The Government objects to the defendant's proposed instruction on the definition of "material" in material nonpublic information insofar as it suggests that information that "comes from an insider" is not material if the "information [is] already in the market," or that "speculative information" or information "lacking in specificity" can never be material. (Dkt. No. 59 at 10). These statements are legally incorrect, and the defendant cites no authority supporting them or any case in which these instructions were given. Information concerning a matter that "is already the subject of public rumor or speculation" may be material if the information provides "additional detail, greater reliability, or greater certainty." (Dkt. No. 62 at 8). Moreover, speculative information may be material, depending upon "a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event." (Dkt. No. 62 at 9, quoting *Basic v. Levinson*, 485 U.S. 224, 238 (1988)).

The Government objects to the defendant's proposed instruction on the definition of "nonpublic" (Dkt. No. 59 at 11) because it is inconsistent with Second Circuit precedent that "[i]nformation becomes public when disclosed to achieve a broad dissemination to the investing public generally and without favoring any special person or group." *S.E.C. v. Mayhew*, 121 F.3d 44, 50 (2d Cir. 1997). The Government further objects to the instruction that "[s]ometimes an entity authorizes the release of information or is otherwise willing to make information available to analysts, prospective investors, or members of the press who ask for it." (Dkt. No. 59 at 11). That proposed instruction is unsupported by precedent, includes examples irrelevant to this case, and seems to be inconsistent with the prohibition on selective disclosures codified at 17 C.F.R. § 243.100, which post-dates the language in *Dirks v. SEC*, 463 U.S. 646, 658 (1983) that is cited by the defendant. The Government also objects to the defendant's proposed instruction that the jury must find that the material nonpublic information was "a factor in [the defendant's] decision to buy or sell a swap and that the [defendant] used the information in formulating or consummating

the purchase or sale." (Dkt. No. 59 at 12). The Second Circuit has held that a jury can convict a defendant of insider trading if it finds that the defendant traded while in "knowing possession" of material nonpublic information, and that it is not necessary for the jury to find that the defendant "used" such information. *United States v. Royer*, 549 F.3d 886, 899 (2d Cir. 2008).

The Government objects to the defendant's proposed instructions on the *mens rea* requirements for commodities fraud for three reasons. First, the defendant's proposed instruction on "knowingly" is wrong in multiple respects. To act "knowingly" simply means to act voluntarily and deliberately, rather that mistakenly or inadvertently. (Dkt. No. 62 at 11). It does not require proof that the defendant knew the information met the legal definition of "materiality." *See Hamling v. United States*, 418 U.S. 87, 123-24 (1974) (no requirement that the defendant knew materials were legally "obscene," he just needed to know their "character and nature"); *United States v. Kosinski*, 976 F.3d 135, 144-45 (2d Cir. 2020) (defendant "need not be aware of the specific law or rule that his conduct may be violating"). The Government also objects to the instruction that "the defendant must also have known he was using the information to purchase or sell a 'swap.'" (Dkt. No. 59 at 13-14). Whether the defendant believed he was trading "swaps," is not something the Government must prove. *See United States v. Brown*, 578 F.2d 1280, 1284 (9th Cir. 1978) ("We think that the government is required to prove specific intent only as it relates to the action constituting the fraudulent, misleading or deceitful conduct, but not as to the knowledge that the instrument used is a security under the Securities Act. The government need only prove that the object sold or offered is, in fact, a security; it need not be proved that the defendant had specific knowledge that the object sold or offered was a security."); *United States v. Tucker*, 345 F.3d 320, 330 (5th Cir. 2003) ("We flatly reject this reasoning and instead adopt the Ninth Circuit's view that the defendant's belief concerning the nature of the securities is irrelevant."); *United States v. Hampton*, No. 23 Cr. 20172 (KMW), 2024 WL 307641, at *3 (S.D. Fla. Jan. 26, 2024) (in a case in which a crypto token, HYDRO, was charged to be a security, "The Government must prove to the jury beyond a reasonable doubt that HYDRO was *in fact* a security by establishing the three *Howey* prongs. Whether Defendant had specific knowledge that the object sold or offered was a security is not an issue as to the charged offenses.").

Second, the Government objects to the defendant's proposed "intent to defraud" instruction, which conflates the requirements of willfulness (*i.e.*, to intent to do something the law forbids) with intent to deceive (*i.e.*, misusing confidential information), improperly suggests that the jury must find the defendant was motivated solely by a bad purpose, *see United States v. Phillips*, 155 F.4th 102, 126 (2d Cir. 2025) ("The intent element for specific intent crimes . . . can usually be satisfied even if the defendant has multiple reasons for taking an action, so long as one reason is the intent to deceive."), and improperly requires the jury to find that the defendant had actual knowledge that the instruments he traded constituted swaps. (Dkt. 59 at 13-15). The Government also objects to the instruction that conduct is not willful if it "was the result of a good faith misunderstanding of the requirements of the law." (Dkt. 59 at 14). While good faith is a defense to the charge of commodities fraud, the defendant does not cite any authority supporting this specific instruction, and it is contrary to the principle of law that the defendant does not need to know he was violating a particular law. (Dkt. No. 62 at 11).

Third, the Government objects to the defendant's unanimity instruction for commodities fraud. (Dkt. No. 59 at 16). The Second Circuit has repeatedly held that a general charge regarding

unanimity is typically sufficient to protect the defendant's right to a unanimous verdict. *See United States v. Estevez*, 961 F.3d 519, 527 (2d Cir. 2020) (collecting cases).

The Government objects to the defendant's proposed definition of a swap. (Dkt. No. 59 at 12-13). As explained in further detail in the Government's opposition to the defendant's motion to dismiss the Indictment (Dkt. No. 25), the defendant's proposed definition is contrary to the plain text of the statute, 7 U.S.C. § 1a47(a)(1)(ii). The defendant's extra-textual definition—that "the contract must itself be inherently or necessarily connected to a financial, economic, or commercial consequence"—would strike "potential" from the statute altogether, since an event that is "inherently economic" produces a certain, not merely *potential*, consequence. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (in interpreting a statute, courts should give effect "to every clause and word of [the] statute"). The defendant's proposed definition would also read out of the statute entirely the "Special Rule" to the Commodity Exchange Act, codified at 7 U.S.C. § 7a-2(c)(5)(C), which permits, but does not require, the CFTC to bar an event contract or swap from listing on a designated contract market if it determines the contract is "contrary to the public interest," *id.* § 7a-2(c)(5)(C)(ii). None of the categories of contracts listed in the Special Rule are inherently economic, *e.g.*, "assassination," "war," "gaming," yet the rule presupposes they are swaps.[1] The Government's proposed definition of swap (Dkt. No. 62 at 14-15) gives effect "to every clause and word of [the] statute," which is intentionally broad, *Phillips*, 155 F.4th at 113, while imposing reasonable limiting principles, including that "the connection between the event and the consequence must be concrete and articulable, and not merely speculative, tenuous, or remote." (Dkt. No. 62 at 14, citing *Coinbase, Inc. v. Illinois*, No. 25 Civ. 15406, 2026 WL 2969682, at *8 (N.D. Ill. 2026)).

**<u>Count One – Unlawful Use of Government Information</u>:**

The Government objects to the defendant's formulation of the elements of Count One. (Dkt. No. 59 at 17-18). First, the defendant's proposed instruction incorrectly suggests that the Government must establish "that the defendant committed commodities fraud" to find the defendant guilty. (Dkt. No. 59 at 17). Commodities fraud, which is separately charged in Count Three, is a different crime with different elements. The defendant's proposed instruction on the elements is also legally wrong. Under 7 U.S.C. § 6c(a)(3), the Government must prove that the information at issue "may affect or tend to affect the price" of a swap, and that the information "has not been disseminated by the department or agency … in a manner which makes it generally available to the trading public." Those requirements, while analogous to the concepts of materiality and nonpublic information, are not the same. Congress chose specific statutory terminology, and the Court should instruct the jury using the language of the statute rather than importing distinct

[1] During oral argument on the defendant's motion to dismiss the Indictment, defense counsel argued that Congress's directive to the CFTC to scrutinize swaps concerning "war" does not reflect Congress's intent that swaps may include "war" contracts because the Special Rule applies to both swaps and event contracts. But none of the categories in the Special Rule are "inherently economic," as the defendant defines it. Thus, by directing the CFTC to review swap contracts concerning specified categories, none of which are "inherently economic," Congress must have intended, consistent with the plain text of the CEA, that swaps are not limited to contracts that are "inherently economic."

concepts. Information that "may affect or tend to affect the price" of a swap encompasses the information's potential market impact while "materiality" turns on whether there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision. Similarly, the statutory requirement that the information has not been disseminated by the relevant agency "in a manner which makes it generally available to the trading public" is a specific dissemination-based inquiry that differs from the more generalized concept of whether information is "nonpublic."

The Government further objects to the defendant's proposed unanimity instruction, which is superfluous and unnecessary.

**Count Two – Misappropriation of Government Information:**

The Government has the same objections to the defendant's proposed instructions for Count Two as the Government's objections to the defendant's instructions for Count One.

**Count Three – Wire Fraud:**

The Government objects to the defendant's proposed wire fraud instructions.

As to the first element of wire fraud, a scheme or artifice to defraud to obtain money or property, the defendant's instruction incorrectly describes the Indictment as alleging that the defendant obtained only one type of property. (Dkt. No. 59 at 21-23). The Indictment alleges that the defendant sought to obtain two types of property: (1) confidential information of the United States military; and (2) money or property from the counterparties with whom the defendant traded on Polymarket. (Dkt. No. 62 at 29-30). A finding that the defendant sought to obtain either type of property is sufficient to satisfy the first element of wire fraud. As to confidential military information, the defendant's proposed instruction erroneously instructs the jury that to qualify as property, the information must have been created for a commercial purpose and have commercial value to the victim. (Dkt. No. 59 at 23). As the Government explained in detail in its opposition to the defendant's motion to dismiss the Indictment (Dkt. No. 25 at 30-35), and as this Court recognized in its opinion denying the defendant's motion to dismiss, binding Second Circuit precedent provides that confidential operational information used in law enforcement and military activities can constitute government property, *United States v. Van Dyke*, No. 26 Cr. 156 (MMG), 2026 WL 3206159, at *8-11 (S.D.N.Y. Oct. 26, 2026).

The Indictment also alleges that the defendant misappropriated confidential military information and used that information to obtain a second type of property—money or property from the counterparties with whom the defendant traded on Polymarket. (Dkt. No. 25 at 35-38). The Second Circuit has squarely rejected any "convergence" requirement, *i.e.*, that the party deceived must be the same party whose money he obtained. *See United States v. Greenberg*, 835 F.3d 295, 306-07 (2d Cir. 2016) (holding that nothing in the text of § 1343 "suggests that the scheme to defraud must involve the deception of the same person or entity whose money or property is the object of the scheme," and that "wire fraud does not require convergence between the parties intended to be deceived and those whose property is sought in a fraudulent scheme."). District courts in this Circuit have applied *Greenberg* repeatedly. *See United States v. Weigand*,

482 F. Supp. 3d 224, 237 (S.D.N.Y. 2020); *United States v. Martinez*, No. 22 Cr. 251 (LJL), 2023 WL 2118081, at 3 (S.D.N.Y. Feb. 17, 2023); *Azima v. Dechert LLP*, No. 22 Civ. 8728 (PGG) (JW), 2024 WL 4665106, at 28-29 (S.D.N.Y. Sept. 26, 2024). Accordingly, the Government's second theory of property—that the defendant defrauded the U.S. military to obtain money or property from counterparties on Polymarket—is well supported by binding precedent, and the Government requests that the Court instruct the jury consistent with its proposed instruction.

The Government also objects to the defendant's instruction for the first element of wire fraud insofar as it omits key clarifying instructions, including that (i) it is not necessary for the defendant to know that the law characterizes a particular item as "property," *see Shaw v. United States*, 580 U.S. 63, 68 (2016) (noting "legal ignorance … is no defense to criminal prosecution" for property fraud), and (ii) it is not necessary for the Government to prove that the victim was actually defrauded or suffered a loss or was deprived of property. (Dkt. No. 62 at 30-31).

The Government objects to the defendant's proposed instruction for the second element of wire fraud—intent to defraud. The defendant's proposed instruction incorrectly states that Government must establish that the defendant acted willfully and with intent to deceive. Willfulness is not an element of wire fraud. *See United States v. Novis*, No. 20 Cr. 335 (JMA), 2023 WL 4746541, at *22 (E.D.N.Y. July 24, 2023), ("[W]illfulness is not an element of mail and wire fraud and, as such, the jury charge on mail and wire fraud should not have included an instruction on willfulness.") *aff'd sub nom. United States v. Denkberg*, 139 F.4th 147 (2d Cir. 2025); *United States v. Gentile*, No. 21 Cr. 54 (RPK), 2025 WL 777090, at *32 (E.D.N.Y. Mar. 11, 2025) ("[J]ury charge on wire fraud properly omitted a willfulness requirement."); *United States v. Middendorf*, No. 18 Cr. 36 (JPO), 2019 WL 4254025, at *7 (S.D.N.Y. Sept. 9, 2019) ("[W]ire fraud statute requires a specific intent to defraud but not willfulness or any other proxy for knowledge of the law."). For the same reason, the Government objects to the defendant's good faith instruction, which provides that "the law is not violated if the defendant honestly believed that his actions were lawful and not in furtherance of any unlawful scheme." (Dkt. No. 59 at 24). Willfulness is not an element of wire fraud, and the Government need not prove that the defendant acted with intent to violate the law.

The Government also objects to the defendant's formulation of intent to defraud insofar as it suggests that the defendant cannot be convicted if the jury believes he had mixed motives. A defendant may have the requisite intent to defraud even if he was motivated by other, lawful purposes, *Phillips*, 155 F.4th at 126, or even if the defendant believed everything would ultimately work out for the victim, *Ciminelli v. United States*, 598 U.S. 306 (2023).

The Government also objects to the defendant's proposed instruction that the defendant's violation of his professional duties to the U.S. military is not sufficient proof of intent to defraud. (Dkt. No. 59 at 23). The defendant's proposed instruction is confusing and, because policies applicable to the defendant prohibited him from using nonpublic information to benefit himself, incorrectly suggests to the jury that the defendant's knowing and intentional improper use of the military's nonpublic information to benefit himself is insufficient proof of intent to defraud.

The Government objects to the defendant's proposed instruction for the third element of wire fraud—interstate or international wires—insofar as it requires proof of wires passing "between two or more states" and therefore omits international wires. (Dkt. No. 59 at 24).

**Venue**

The Government objects to the defendant's proposed venue instruction. (Dkt. No. 59 at 31-32). Unlike the Government's proposed instruction (Dkt. No. 62 at 41-41), the defendant's instruction does not break out the venue requirements by crime and imposes additional, unnecessary, and unsupported requirements on the Government.

**Compliance and Employment Policies**

The Government objects to the defendant's proposed instruction concerning compliance with employment policies, which provides that the Court's jury instructions do not apply to "anything in the [employment] policies," and claims that the policies impose different requirements than the law. (Dkt. No. 59 at 34). The defendant's proposed instruction is confusing and prejudicial for several reasons. First, whether the defendant owed a duty of trust and confidence to the U.S. military depends, at least in part, on the existence of such policies. The jury will therefore be required to consider employment policies in determining whether the Government established certain elements of the charged offenses. The defendant's proposed instruction could wrongly and unfairly cause jurors to disregard or minimize important evidence that the Government is expected to show in an insider trading case. Second, at least one of the policies prohibited the defendant from misappropriating the government's nonpublic information. Several of the charged offenses require the Government to establish that the defendant misappropriated the government's nonpublic information. Instructing the jury in a manner proposed by the defendant will incorrectly and misleadingly suggest to the jury that the defendant's knowing and intentional improper use of the military's nonpublic information to benefit himself is insufficient proof.

**Insider Trading**

The Government objects to the defendant's proposed instruction concerning insider trading. (Dkt. No. 59 at 36). The defendant's instruction is designed to sanitize the defendant's conduct and suggest to the jury that conduct commonly known to be wrongful is not. The Court's

standard jury instructions directing the jury to follow the Court's instructions on the law is sufficient.

Respectfully submitted,

SEAN S. BUCKLEY
Deputy United States Attorney
Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515

By: ______________________________
Nicholas W. Chiuchiolo
Ryan B. Finkel
Juliana N. Murray
Assistant United States Attorneys
(212) 637-1247/ -6612/ -2314

cc: all counsel of record (by ECF)