# AGNIFILO INTRATER

November 20, 2026

**VIA ECF**
The Honorable Margaret M. Garnett
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re: *United States v. Van Dyke*, 26-cr-00156 (MMG)**

Dear Judge Garnett:

We write on behalf of Gannon Van Dyke with objections to the government's requests to charge. We ask the Court, respectfully, to read these objections in conjunction with, and not instead of, our requests to charge (Dkt.59). We also request, again respectfully, to reserve the right to make further objections and submit additional requests to charge before and at the final charge conference.

## I. Mr. Van Dyke Objects to the Government's Proposed Repeated, Unbalanced, and Unnecessary Instructions on Circumstantial Evidence

The Court will no doubt give customary instructions on direct and circumstantial evidence when charging the jury. Those instructions are likely to include specific language noting that many facts, including a person's state of mind, are not easily proven by direct evidence. Such instructions are normally balanced, telling the jury that facts may be established by circumstantial evidence and the reasonable inferences the jury may draw, that direct and circumstantial evidence are given equal "weight," and that the law "makes no distinction between direct and circumstantial evidence." Such instructions are sufficient, and there is no need to provide additional guidance on circumstantial evidence when charging the substantive elements of the charged crimes.

Van Dyke thus objects to the government's proposed inclusion of redundant additional language instructing on circumstantial evidence in the specific context of the *mens rea* elements of the substantive charges. The proposed language is unnecessary, unbalanced, and unfairly suggests the Court is telling the jury to place greater weight on the government's arguments about circumstantial evidence as to the central issues in dispute. There is no legal requirement to include such language, and in the specific circumstances of this case such redundant instructions are unfairly prejudicial because they put the Court's imprimatur on arguments the prosecution will make about issues in dispute and as to which the government's evidence will be thin at best.

In particular, the government proposes instructing the jury for Count Three that "If you find that the defendant knowingly concealed his true identity, or deliberately took steps to avoid disclosing it, that is a fact from which you may, but need not, infer consciousness of guilt on his part." Gov. RTC #6. This is language from a closing argument, not a jury instruction. Further, in defining the critical element of *mens rea* for Count Three, the government proposes the following:

> Direct proof of knowledge and fraudulent intent *is almost never available. It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.* Such direct proof is not required. The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

Gov. RTC #6. The government proposes the same instruction again when instructing on Count Four. Gov. RTC #20. And it proposes an additional similar instruction in its Request #19 ("A scheme to defraud need not be shown by direct evidence but may be established by all of the circumstances and facts in the case.").

Such language is not only redundant of the general circumstantial evidence charge the Court will give at the outset, it puts a thumb on the scale by telling the jury that direct evidence of these elements is "rare" and emphasizing it is not required to convict. At the same time, these instructions "only point[] towards how guilt is proved," rendering them unbalanced. *United States v. Dove*, 916 F.2d 41, 46 (2d Cir. 1990) (holding charge was unbalanced and requiring "instruction by the trial judge … emphasiz[ing] that the jury could consider the circumstantial evidence of innocence along with the evidence of guilt").

For these reasons, upon the defense's objection in the recent *Garelick* trial, Judge Liman deleted the same redundant and unbalanced language from his proposed charge when instructing on Title 15 and Title 18 securities fraud. *See United States v. Garelick*, No. 23 Cr. 00307 (LJL) (S.D.N.Y. May 6, 2024), Tr.1184 ("THE COURT: And I did strike some of the language that I thought was, number one, not applicable to the case and, number two, was potentially unbalanced, with specifically the language, 'It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past, he committed an act with fraudulent intent.'").

The Court should do the same here. It should give instructions at the outset on the difference between circumstantial and direct evidence. And it should not revisit the matter when charging the substantive elements, which would only serve to unfairly bolster the government's case.

## II. The Court Should Not Give Certain of the Government's Proposed *Mens Rea* Instructions

### A. *Mens Rea* Applies to Each Element

The government proposes various unbalanced and legally incorrect *mens rea* instructions that would improperly reduce its burden to prove the elements of the crimes charged. We object.

With respect to Counts 1-3, the government proposes instructing the jury it "is not required to prove that the defendant in fact knew that the event contract or transaction at issue is classified as a 'swap' under the law" and that "it is no defense that the defendant did not know its status under the law." Gov. RTC #7. When a statute includes a *mens rea* requirement, the requirement applies to "each of the statutory elements that criminalize otherwise innocent conduct." *Rehaif v. United States*, 588 U.S. 225, 229 (2019); *Ruan v. United States*, 597 U.S. 450, 459 (2022) (same)

("knowing and intentional" standard applied to doctor's lack of authorization to prescribe where "ambiguous" regulatory language that was "open to varying constructions" made unlawful conduct "often difficult to distinguish from the gray zone of socially acceptable ... conduct").[1] And "when a statute 'prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.'" *Rehaif*, 588 U.S. at 229 (quoting ALI, Model Penal Code § 2.02(4), p. 22 (1985)).

These requirements are consistent with the fundamental proposition in our jurisprudence that, to be convicted of a crime, a person must know the difference between innocent and criminal behavior, and must know on which side of the line his conduct falls. *Morissette v. United States*, 342 U.S. 246, 250 (1952) (referring to "ancient," "universal," and "persistent" requirement in criminal cases of a culpable state of mind). If criminality turns on the existence of a fact, the government must prove the defendant's knowledge of that fact. *Id.* at 271 (in prosecution for stealing government property, defendant "must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion"); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73 (1994) (defendant must know that actors in pornographic film were underage because "the age of the performers is the crucial element separating legal innocence from wrongful conduct"); *Staples v. United States*, 511 U.S. 600, 605 (1994) (noting "conventional *mens rea* element, which would require that the defendant know the facts that make his conduct illegal"); *Liparota v. United States*, 471 U.S. 419, 425-26 (1985) (defendant must know that his acquisition or possession of food stamps was in a manner unauthorized by statute or else it would "criminalize a broad range of apparently innocent conduct").

Here, whether the at-issue contracts were "swaps" is conduct that "separat[es] legal innocence from wrongful conduct." *X-Citement Video*, 513 U.S. at 73. And the defendant's knowledge that the contracts were swaps also implicates "ambiguous" regulatory language "open to varying constructions" that "plays a 'crucial' role in separating innocent conduct from wrongful conduct." *Ruan*, 597 U.S. at 451. If Mr. Van Dyke did not believe that commodities laws regulated prediction wagers, he could not have willfully violated the law.

For instance, under the government's theory, Mr. Van Dyke would have engaged in an unlawful swap transaction if he had made the "Maduro out by January 31, 2026" bet with one of his unit members.[2] Assuming every other element were established, there, as here, the defendant could only disprove guilt by showing his genuinely held belief that the bet was not a swap and that a commodities regulation statute did not apply to his conduct. To prove guilt, Mr. Van Dyke

---

[1] For the same reason, Mr. Van Dyke requests that the Court's instruction for "knowingly" includes an explanation that "the defendant must have known he was in possession of information that was material, nonpublic, and subject to a duty of trust and confidence." *See SEC v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012) (the defendant "must know that the information…is non-public and is material for securities trading purposes…, [and] must know…that to [use or] disseminate the information would violate a fiduciary duty"); *United States v. Newman*, 773 F.3d 438, 450 (2d Cir. 2014), *abrogated on other grounds by Salman v. United States*, 580 U.S. 39 (2016); *United States v. Garelick*, No. 23 Cr. 00307 (LJL) (S.D.N.Y. May 2, 2024), Tr.675 (government conceded "the defendant must know that the information was material, nonpublic, and subject to duty of trust and confidence").

[2] Nothing in the "swap" definition requires contracts to trade on designated contracts to be considered a "swap." *See* 7 U.S.C. § 1a(47)(A)(ii). Under the government's theory as several courts have noted, this type of tableside bet *would* constitute a swap. *Assad*, 190 F.4th at 1115 (the CFTC's proposed interpretation "would have to include all bets on 'bingo games' and 'pingpong matches'"—an "overly broad reading").

therefore must have known that prediction markets constituted swaps, or, at minimum, that he believed that commodities laws applied to the at-issue contracts, and the jury should be instructed so.

With respect to Count Four, the government proposes instructing: "It is not necessary for the defendant to know that the law characterizes a particular item as 'property.'"

The wire fraud statute criminalizes "scheme[s] or artifice[s] to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." § 1343. "Although the statute is phrased in the disjunctive," it only criminalizes schemes to "obtain[] money or property." *Ciminelli v. United States*, 598 U.S. 306, 312 (2023). "Accordingly, the Government must prove not only that wire fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'" *Id.* (quoting *Kelly v. United States*, 590 U.S. 391, 391 (2020)). The statute requires specific intent to defraud the victim of "money or property," and further requires the defendant to act knowingly. The "money or property" requirement constitutes the bright line between conduct that is fraudulent (and therefore prohibited) and conduct that is not. Accordingly, it is axiomatic the defendant must know his scheme was one to obtain "money or property" and act with the specific intent to defraud the victim of such "money or property."

The government cites two inapposite cases in support of its legally incorrect wire fraud instruction. First, it states its proposal is adapted from the jury charge in *United States v. Solomon*, No. 24 Cr. 665 (Apr. 21, 2026). In *Solomon*, however, the issue was not litigated because the defendant consented to the government's proposed language. *See* Tr.550 (noting same). *Solomon* is neither binding nor persuasive here. *Shaw v. United States*, 580 U.S. 63 (2016), a bank fraud case, is also inapposite. *Shaw* analyzed distinct language in the bank fraud statute, which criminalizes schemes "to defraud a financial institution," which does not contain the wire fraud statute's "money or property" requirement and does not require "the object of the fraud to be 'property' in the victim's hands." *Cleveland v. United States*, 531 U.S. 12, 26 (2000). Moreover, *Shaw* itself confirmed the government is required to "prove a defendant's knowledge that his scheme to defraud 'would likely harm the bank's property interest.'" *United States v. Nejad*, 2020 WL 883500, at *1 (S.D.N.Y. Feb. 24, 2020) (Nathan, J.) (citing *Shaw*, 580 U.S. at 469).

Accordingly, Van Dyke's proposed charge includes *mens rea* instructions consistent with these legal requirements, and we object to the government's proposed instructions that would permit the government to sidestep its burden.

### B. <u>Defendant Must Trade On The Basis of Material, Nonpublic Information</u>

The government's instruction states that a duty of trust and confidence prohibits an insider from trading "while knowingly possessing" material, non-public information. Gov. RTC #5. Trading while in "knowing possession" is insufficient. Instead, the material, nonpublic information must be a factor in the defendant's decision to trade—or, in other words, the defendant must trade "on the basis of material, nonpublic information." *United States v. O'Hagan*, 521 U.S. 642, 652 (1997).

The "knowingly in possession" language proposed by the government, while previously upheld in this Circuit, was upheld after giving deference to the SEC's interpretation of Rule 10b-

5. *See United States v. Teicher*, 987 F.2d 112, 120 (2d Cir. 1993) ("As the promulgator of Rule 10b-5, the SEC's interpretation that this rule only requires 'knowing possession' is entitled to some consideration."); *United States v. Royer*, 549 F.3d 886, 899 (2d Cir. 2008) ("[T]he SEC subsequently enacted Rule 10b5-1, adopting a knowing possession standard, and that determination is itself entitled to deference."). Courts should not afford deference to Rule 10b5-1, promulgated under §10(b), or to the CFTC's parallel Rule 180.1, promulgated under CEA §6(c). *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024); *Whitman v. United States*, 135 S. Ct. 352, 353 (2014) (concurring in denial of petition for certiorari, joined by Thomas, J.) (stating that such deference "would turn [the Court's] normal construction…upside-down, replacing the doctrine of lenity with a doctrine of severity").

There remains a circuit split on whether the "knowingly in possession" test or the more stringent "use test" is the proper interpretation of §10(b) and Rule 10b-5. *See SEC v. Adler*, 137 F.3d 1325, 1337 (11th Cir. 1998) (concluding "that the use test is the appropriate test"); *United States v. Smith*, 155 F.3d 1051, 1067 (9th Cir. 1998) (same, and observing that "the weight of authority supports a 'use' requirement"); *SEC v. Lipson*, 278 F.3d 656, 661 (7th Cir. 2002) (adopting intermediate position); *see also* Andrew Verstein, Mixed Motives Insider Trading, 106 Iowa L. Rev. 1253 (2021).

The defense in *Garelick* objected to a similar "knowing possession" charge requested by the government. There, Judge Liman was "ultimately was persuaded that the language that was used by the district court judge in the charge in *Royer* accurately described the element of the offense" and "elected to use the language of the charge which was affirmed by the circuit in *Royer*, rather than the language that the Second Circuit used in *Royer* that knowing possession was sufficient." Charge Conference, *United States v. Garelick*, No. 23 Cr. 307 (LJL) (S.D.N.Y. May 6, 2024) (ECF 170 at 1181). He rejected the "knowing possession" language and instead instructed the jury that the law forbids trading "on the basis of" material nonpublic information in violation of a duty of trust and confidence. *See* Final Charge, *United States v. Garelick*, No. 23 Cr. 307 (LJL) (S.D.N.Y. May 8, 2024) (ECF 174 at 1557, 1563). The Court should do the same here.

## III. <u>Information Must Be Characterized as Material and Nonpublic for Counts 1 and 2</u>

Mr. Van Dyke objects to the government's instructions for Counts 1 and 2 insofar as they provide alternative definitions for "material" and "nonpublic" that will confuse the jury. Mr. Van Dyke requests the Court instead refer back to the definitions provided for Count Three.

### A. <u>Nonpublic</u>

Mr. Van Dyke objects to the government's proposed instructions for Counts 1 and 2 which substitute official dissemination of information for nonpublic information. The government proposes instructing the jury that it is sufficient to find "the information had not been officially or released or disseminated." Gov. RTC #s10, 13. The government also requests the following:

> [T]he Government must prove that the information had not been disseminated by the department or agency holding or creating it, by Congress, or by the judiciary in a manner that made it generally available to the public. The Government must also prove that the information had not been disclosed in a criminal, civil, or

> administrative hearing, or in a congressional, administrative, or Government Accountability Office report, hearing, audit, or investigation.

Gov. RTC #10.

It is not a crime to use information in the public commons, even if for deceptive reasons. In *United States v. Heine*, the Second Circuit reversed a conviction for conspiracy to act as an agent for a foreign government where the defendant compiled "information from sources that were lawfully accessible to anyone"—including notes from correspondence with airplane manufacturers and conversations with employees of airplane factories, as well as information from technical catalogues—and provided it to the German Reich during World War II. 151 F.2d 813, 814-17 (2d Cir. 1945) (Hand, J.). Although the defendant "misled his correspondents as to his motive in asking for information," and engaged in a course of action that was "surreptitiously adopted in order to escape detection," that deception "did not make the spread of information criminal, which it would not have been criminal to spread, if he had got it fairly." *Id.* at 815-16. The constitutional principle that people are free to use information in the public commons exists in other areas of law, too. *See, e.g.*, *Speedry Chem. Prods., Inc. v. Carter's Ink Co.*, 306 F.2d 328, 331 (2d Cir. 1962) ("Matters of public knowledge … cannot be appropriated by one as his [trade] secret."); *Florida Star v. B.J.F.*, 491 U.S. 524, 533-39, 541 (1989) ("[O]nce the truthful information was 'publicly revealed' or 'in the public domain' the court could not constitutionally restrain its dissemination." (quoting *Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 103 (1979))); *cf. Fin. Info., Inc. v. Moody's Invs. Serv., Inc.*, 808 F.2d 204, 208 (2d Cir. 1986) ("If, for example, the work is in the public domain, then its use would not be wrongful.").

The government's proposed instruction would permit the jury to treat information as nonpublic solely because the agency holding or creating it had not officially released it, even if the same information was already lawfully available to anyone. Although the CEA expressly identifies the governmental sources of qualifying dissemination, its meaning should not be enlarged into a rule that an agency's failure to acknowledge publicly available facts makes those facts nonpublic. And if there were any doubt that the CEA is regulating only use of "nonpublic" information, the name of the statutory provision erases it. *See* 7 U.S.C. § 6c(a)(4)(C) (titled "Theft of Nonpublic Information").

The government's construction also raises fair notice and vagueness problems: An employee could consult the same public sources and make the same trading decisions as any other market participant yet face criminal liability because the agency had not formally acknowledged what those sources disclosed. Take, for instance, an EPA official who learns of a large oil spill in the Gulf of Mexico by virtue of his agency employment and trades oil futures after there is widespread reporting on the spill, but no official statement from the EPA. A jury could convict him applying the government's instruction. But the government violates the Due Process clause when it "tak[es] away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). And the government's reading raises substantive due process issues as well, given it is a clearly established historical right that information in the public domain is available for all to use freely.

Mr. Van Dyke further objects to the government's conflation of nonpublic information with information that "had not already been reflected in the market price of the transaction." Courts

may assume that securities and commodities markets operate efficiently, but there is no such factual predicate demonstrating that prediction markets like Polymarket are similarly efficient. The government's proposed language assumes that prediction markets are efficient and immediately absorb public information into contract prices. This assumption lacks any support. Indeed, evidence suggests that prediction markets are *not* efficient. For instance, Kalshi, a platform offering prediction markets on whether individual stocks will reach certain prices (called "perpetuals"), must employ cost adjustments and periodic payments between "yes" and "no" bettors to ensure that the contract price at least roughly tracks the actual market price of the underlying security. "How Funding Works," Kalshi (June 3, 2026)[3]; Sharon LaFraniere et al., "Kalshi Lets You Bet on Stocks. Exchanges Are Livid.," N.Y. Times (Nov. 12, 2026).[4] Therefore, public information may not be reflected in the price of a prediction market and the government's proposed instruction will mislead the jury to believe otherwise.

### B. <u>Material</u>

Mr. Van Dyke objects to the government's alternative instruction for the first element of Counts One and Two, which states that information "may affect or tend to affect the price of a swap" or "could influence that price." Gov. RTC #8, 10, 13, 15. This is synonymous with materiality. *See SEC v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997) ("Material facts include those ... which in reasonable and objective contemplation *might* affect the value of a corporation's stock or securities."); *United States v. Martoma*, 993 F. Supp. 2d 452, 457-58 (S.D.N.Y. 2014) ("the concept of materiality translates into information that alters the price of the firm's stock"); *United States v. Contorinis*, 692 F.3d 136, 143 (2d Cir. 2012) ("The content of a piece of information may be of importance in affecting the share price but so well-known that it does not alter the mix of available information and is therefore not deemed to be material. Conversely, the same information, if previously unknown to the public, may alter substantially the mix of information and thus be deemed very material. Information also comes in varying degrees of specificity and reliability ...."). There is no need to define materiality two different ways, which will likely confuse jurors.

## IV. <u>Mr. Van Dyke Objects to the Government's Swap Definition</u>

Mr. Van Dyke objects to the government's definition of "swap." *See* Gov. RTC #7. The Court should instruct the jury consistent with the defense's proposed instruction, which is also consistent with the law. *See* Dkts.23, 31, 32. Indeed, Judge McMahon recently decided this issue, holding that "associated with" "cannot be read so broadly and must instead be construed 'to refer to events that are inherently associated with potential financial consequences.'" *Ludlow Exch., LLC v. James*, No. 26 Civ. 6676 (CM), 2026 WL 3408217, at *10 (S.D.N.Y. Nov. 10, 2026) (quoting *Schuler* and citing *Assad*).

## V. <u>Mr. Van Dyke Objects to the Government's Instructions on Duty of Trust and Confidence</u>

Mr. Van Dyke objects to the government's instructions defining "an insider," "scheme to defraud," and the "duty of trust and confidence" because they convey inaccurate statements of

---

[3] https://help.kalshi.com/en/articles/15357613-how-funding-works

[4] https://www.nytimes.com/2026/11/12/us/politics/kalshi-commodity-futures-stocks.html?smid=nytcore-ios-share

the law and allow the jury to believe that entrusting someone with confidential information alone is sufficient to give rise to a duty of trust and confidence. Gov. RTC #5, 19.

This is incorrect. The law requires a "pre-existing agreement of confidentiality," and the duty "cannot be imposed unilaterally by entrusting a person with confidential information." *United States v. Chestman*, 947 F.2d 551, 567 (2d Cir. 1991) (en banc).

The government's proposed language suggests that access to confidential information alone—or being "entrusted" with confidential information—establishes the requisite duty of confidentiality. *See, e.g.*, Gov. RTC #5 ("when the information has been entrusted to the insider in confidence or the insider is otherwise obligated to keep the information confidential or use it only for authorized purposes"); Gov. RTC #19 ("entrusted with access to or possession of confidential information"); *id.* ("Confidential information is entrusted to a defendant's care when the defendant has access to it by virtue of a position of trust, duty, or authority").

Not so. The instructions must convey that a duty of trust and confidence must be a preexisting duty understood by the parties and established prior to the communication of the at-issue information. The Court should instead use the defense's proposed instructions on "scheme to defraud" and "duty of trust and confidence." *See* Defense Req. #3(II)(A), 6(II)(A).

Similarly, at times the government states the duty is one of trust "or" confidence. "Or" is incorrect. The law requires a relationship of trust ***<u>and</u>*** confidence. *See O'Hagan*, 521 U.S. at 652 (requiring proof of a "duty of loyalty *and* confidentiality") (emphasis added); *United States v. Martoma*, 894 F.3d 64, 73 (2d Cir. 2017) (reiterating that "[i]t is [] the breach of a fiduciary duty or other 'duty of loyalty *and* confidentiality' that is a necessary predicate to insider trading liability") (emphasis added); *Salman v. United States*, 137 S. Ct. 420 (2016) (reaffirming "trust *and* confidence" requirement) (emphasis added).

## VI. <u>The Court Should Not Give the Government's Proposed Count Four "Property" Instruction</u>

As outlined in Van Dyke's motion to dismiss, the alleged confidential military plans are not "property" under the wire fraud statute. *See* Dkt.23 at 32-46; Dkt.31 at 11-18.[5] We accordingly object to the government's proposed "property" charge in its entirety—which references principles discussed in *Girard* that have no application to the wire fraud statute.

The Court rejected this argument at the motion to dismiss stage, relying on *United States v. Girard*, 601 F.2d 69 (2d Cir. 1979), and *United States v. Blaszczak*, 56 F.4th 230 (2d Cir. 2022). We respectfully ask the Court to reconsider its decision for purposes of charging the jury on Count Four. The Court should instruct, consistent with *Chastain* and Van Dyke's Requests to Charge, that to constitute "property" information "must … have commercial value to the victim" and "[i]f the information lacks commercial value to the victim, it cannot be considered property." Dkt.59 at 23. We make this request for several reasons.

*First*, *Girard* did not interpret "property" in the wire fraud statute but only broader "thing of value" language in 18 U.S.C. § 641 – as it was a § 641 case. And *Blaszczak* did not adopt *Girard*'s holding as a viable construction of the term "property" in the fraud statute. That

[5] We incorporate these arguments into our objections herein.

*Blaszczak* "expressly distinguished *Girard* rather than limiting or overruling it" does not demonstrate otherwise. Dkt.47 at 17. *Blaszczak* vacated the at-issue § 641 convictions and in doing so distinguished *Girard*—a case affirming § 641 convictions. There was no reason to overrule *Girard*, which concerned only § 641 and was premised on distinguishable facts. Distinguishing a prior § 641 case does not mean *Blaszczak* attempted to revive *Girard*'s holding as a viable construction of "property" in the fraud statutes.

Although this Court read *Blaszczak* as "fram[ing] the governing inquiry collectively" across both the wire fraud statute and section 641, Dkt.47 at 19, *Blaszczak* discussed the statutes collectively only because of the posture of the case and the arguments made by the parties throughout the appeal. As the Acting Solicitor General explained to the panel on remand from the Supreme Court, "no one in the[ *Blaszczak*] cases … argued that the confidential government [information] at issue could be a 'thing of value' if it were not 'property.'" U.S. Supp. Letter Brief at 8, *United States v. Blaszczak*, No. 18-2811 (2d Cir. June 4, 2021) (ECF No. 497). The two inquiries thus appeared related for purposes of vacating the convictions, but only based on the parties' advocacy and the posture of the case.[6]

*Second*, the Supreme Court has since *Blaszczak* made even clearer that "property" in the fraud statutes is limited to its common-law meaning, a statutory analysis *Girard* expressly eschewed. Thus, even if *Girard* interpreted "property" (it didn't), its analysis would be invalid.

For example, this Court relied on Judge Sullivan's dissent in *Blaszczak*, where he opined (citing *Girard*) that Second Circuit "case law defines the phrase 'thing of value' under section 641 by reference to case law interpreting the term 'property.' [*See Girard*, 601 F.2d at 71.]" Dkt.47 at 20 (citing *Blaszczak*, 56 F.4th at 257 n.2 (Sullivan, *J.*, dissenting)).

But that is ***incorrect***. *Girard* itself reasoned that "thing of value" in section 641 is broader than "property" in the fraud statutes. *See* Dkt.31 at 13. Indeed, *Girard* incorporated the district court's reasoning on that point,[7] where the court held that "thing of value" "contrast[ed] sharply with the more concrete references" in the statute to "money or other property of the United States." *United States v. Lambert*, 446 F. Supp. 890, 892-93 (D. Conn. 1978). The court reasoned the phrase "thing of value" was an "open-ended phrase" that "evidence[d] Congress' intent to cover a wide variety of conduct." *Id.* at 893. *Girard* thus saw "no reason to restrict the meaning of s 641 to its common-law origins," *Lambert*, 446 F. Supp. 890 at 893, concluded the phrase "must be independent of the constraints, and the vagaries, of particular common-law doctrines," *id.* at 895, and held "[a] more flexible interpretation of s 641 … is therefore appropriate," *id.* at 894. This is exactly ***the opposite*** of the approach the Supreme Court has since instructed courts to take when interpreting "property" in the fraud statutes.[8]

---

[6] Notably, Judge Kearse, who authored the dissent in *Blaszczak I* and the opinion in *Blaszczak II*, did not collapse the "property" and "thing of value" inquiries in her original dissent, but discussed the statutes separately. *See Blaszczak*, 947 F.3d at 47-48.

[7] "[*Girard*] affirmed the reasoning of the district court, which it adopted in full." Dkt.25 at 30 (government's brief).

[8] *See, e.g.*, *Kousisis v. United States*, 605 U.S. 114, 124 (2025) ("[W]e have long interpreted [fraud] by reference to its common-law pedigree"); *Neder v. United States*, 527 U.S. 1, 22 (1999) ("[P]roperty" must be interpreted consistent with its "well-settled meaning at common law"); *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 187 (2016) ("[T]he term 'fraudulent' is a paradigmatic example of a statutory term that incorporates the

Section 641's "thing of value" language is categorically different. Resolving any doubt on that score, the Second Circuit has further clarified that the phrase "thing of value" comprises "words of art" covering a broader scope, specifically citing *Girard*'s analysis that the phrase is broader. *United States v. Calk*, 87 F.4th 164, 182 (2d Cir. 2023) (citing *Girard*, 601 F.2d at 71). Moreover, because *Girard* "postdate[s] the enactment of the wire fraud statute ([] by several decades), any rule [it] articulate[s] … cannot possibly satisfy the old-soil principle" on which the Court must rely when interpreting "property." *Kousisis*, 605 U.S. at 129, n.6. This is further evidence *Blaszczak* did not revive—and could not have revived—*Girard*'s holding as a viable construction of "property" in the fraud statutes. *Blaszczak* did not identify—or attempt to identify—any common law "property" analogue to the DEA investigatory information at issue in *Girard*, as would be required to conclude that such information could constitute "property."

Again, the government has not offered any precedent holding that the at-issue military information was "widely accepted" as "property" at common law. *Id.* at 124. Nor has it offered such precedent supporting its proposed instruction, which is fatal to its proposed language.

*Third*, the Court's motion-to-dismiss opinion overlooked the Second Circuit's *Chastain* decision, which is binding here. Respectfully, it is unclear why the Court did not discuss *Chastain*. The government posits that *Chastain* "recogniz[ed] that the commercial value requirement applies in the commercial—not governmental—context." Gov. RTC #19.

*Chastain* did no such thing—such a concept is completely absent from the opinion. Its holding applies to what type of information qualifies as "a traditional property interest" under the common law. 145 F.4th at 294. *Chastain* thus held: "Information cannot qualify as a traditional property interest if its holder has no economic interest in its exclusive use or in otherwise keeping the information confidential." 145 F.4th at 294. It further observed there must be a "connection between the information and a commercial interest," and "confidential information that lacks any connection to economic decision-making does not qualify as a traditional property interest." *Id.* at 294 n.3. The holding is not limited to private-sector information and equally applies to purported government information, because the holding concerns when information itself can constitute a traditional property interest. And even *Blaszczak* held that an essential characteristic necessary to prove a "traditional property interest" in confidential information is that the information has commercial value to its owner—akin to its "stock in trade"—such that its misappropriation could "direct[ly] impact [the owner's] fisc." *Id.* at 243-44.[9]

*Finally*, the Court observed "the rule of lenity does not apply to Count Four." Dkt.47 at 22 n.14. But that conclusion violates binding Second Circuit and Supreme Court precedent. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 410-11 (2010); *Cleveland v. United States*, 531 U.S. 12, 25 (2000) (rule of lenity is "especially appropriate" "[i]n deciding what is 'property'"); *McNally v.*

---

common-law meaning of fraud"); *United States v. Chastain*, 145 F.4th 282, 292 (2d Cir. 2025) ("[T]he wire fraud statute reaches only traditional property interests. To qualify as a traditional property interest, even an intangible right must protect an interest that had long been recognized as property when the wire fraud statute was enacted.") (cleaned up).

[9] Ironically, in *Chastain* the government argued against vacatur by attempting to distinguish *Blaszczak*, arguing that it was in the government context where "property" was given a more restrictive meaning. *See* U.S. Brief at 21 n.4, *United States v. Chastain*, No. 23-7038 (2d Cir. Apr. 16, 2024) (ECF No. 38). Now, merely in an attempt to distinguish *Chastain*, it suggests the opposite is true.

*United States*, 483 U.S. 350, 359-60 (1987); *United States v. Evans*, 844 F.2d 36, 42 (2d Cir. 1988) (interpretation of fraud statutes should be "colored by the rule of lenity, which the Supreme Court recently directed we consider").

## VII. <u>The Court Should Not Instruct the Jury on the Government's Non-Convergence Theory</u>

The Court's motion-to-dismiss decision did not resolve whether the government's charging theory requires convergence between the deceived victim and the party who parts with money or property.[10] Such convergence is required to prove fraud, especially in a misappropriation case. *See* Dkt.31 at 18-22.[11] This is true for multiple reasons. Accordingly, Van Dyke objects to the government's proposed language suggesting that the object of the charged scheme could be the "money" of his Polymarket counterparties, and its additional proposed charging language premised on non-convergence.

*First*, the common law made clear convergence is required. The Restatement instructs "[o]ne who fraudulently makes a misrepresentation of fact … for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability *to the other in deceit*." Restatement (Second) of Torts §525 (1977) (emphasis added). It further explains one's liability is limited to "the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon *the misrepresentation*." *Id*. §531 (emphasis added). The Ninth Circuit thus holds "the intent must be to obtain money or property from the one who is deceived." *United States v. Ali*, 620 F.3d 1062, 1070 (9th Cir. 2010).

*Second*, the convergence requirement is further demonstrated by fraud's additional "injury" and "materiality" requirements. "[F]raud require[s] proof that the victim was injured," *Kousisis*, 605 U.S. at 128, n.5,[12] and "material" misrepresentations made to that party, *id.* at 131.

"[I]njury" "occur[s] when a fraudster obtain[s] from an owner, by a false representation of a fact which he deems material, property which he would not otherwise have parted with." *Id.* at 128, n.5. Thus, "fraud occurs only when the victim has been actually misled to his injury." *Id.* at 127. "As [common law] cases and treatises … confirm, it was the deception-induced deprivation of property … that common-law courts generally deemed injurious." *Id.* at 127. Injury here thus means depriving "the *victim*"—the party deceived—"of a traditional property interest," not some third party like a Polymarket counterparty who is not alleged to have been deceived in any way. *Kousisis*, 605 U.S. at 134 (emphasis added).

The "materiality" element further underscores the point. As *Kousisis* explained, "materiality look[s] to the effect on the likely or actual behavior of the *recipient* of the alleged misrepresentation" and "[r]esembl[es] a but-for standard, … ask[ing] whether the

---

[10] The Court did observe that "the Government's case rests upon the misappropriation theory of insider trading as recognized in *O'Hagan*," and that the victim charged here is Van Dyke's employer, the military. Dkt.47 at 21. The government conceded this. Oct. 7, 2026 Tr.75:1-2 ("the [charged] scheme is aimed at the army, at the government"); *id.* Tr.77:7-13 (government confirmed "[t]he deceived victim" is the government and not Polymarket "counterparties").

[11] We incorporate these arguments into our objections herein.

[12] The injury requirement is not to be confused with economic loss *per se*, which *Kousisis* held is not required.

misrepresentation constituted an inducement or motive to enter into a transaction." *Id.* at 131 (cleaned up, emphasis added). In the context of "contracting"—such as the Polymarket transactions here—"a misrepresentation is material only if it would likely ... induce a reasonable person to manifest his assent." *Kousisis*, 605 U.S. at 139 (Thomas, *J.*, concurring) (cleaned up); *Neder v. United States*, 527 U.S. 1, 16 (1999) ("a false statement is material if it has a natural tendency to influence … the decision of the decision-making body to which it was addressed.").

The government has not alleged that Van Dyke made any misrepresentations to his Polymarket counterparties. It is undisputed they entered the purported contracts on their own volition. Nor has it alleged the Polymarket counterparties were injured based on reliance on purported misrepresentations. *See United States v. Peraire-Bueno*, 2026 WL 3520573, at *19 (S.D.N.Y. Nov. 16, 2026) (concluding conduct could not furnish a "deceptive act" because the government failed to explain how the defendant "communicated anything to his customers, let alone anything false."). Instead, in a misappropriation case like this one, the only party deceived and injured—the victim, that is—is the principal whose property is allegedly misappropriated based on the purported false, material promises and/or omissions of its alleged fiduciary.[13]

The Supreme Court thus explained in *O'Hagan* that in a misappropriation case a "fiduciary who pretends loyalty to the principal while secretly converting the principal's information for personal gain…defrauds the *principal*." 521 U.S. at 652 (emphasis added). "[T]he person or entity defrauded *is not* the other party to the trade." *Id.* at 656 (emphasis added).

The party deceived in this case—the victim here—thus cannot be Van Dyke's Polymarket counterparties—the "other party to the trade." "There is no general duty to disclose before trading on material nonpublic information" and trading on such information therefore cannot be said to deceive the trading counterparty. *Dirks v. SEC*, 463 U.S. 646, 654 (1983) (citing *Chiarella v. United States*, 445 U.S. 222, 235 (1980)).

*United States v. Chestman* explains the same: In misappropriation cases "the predicate act of fraud [is] perpetrated on *the source* of the nonpublic information," not "the buyer or seller" who is the trading counterparty. 947 F.2d 551, 566 (2d Cir. 1991) (en banc) (emphasis added). *Carpenter* and *O'Hagan* further held that misappropriation "constitutes fraud" because it is "akin to embezzlement"—a form of theft through which the defendant steals money or property from *his principal*. *O'Hagan*, 521 U.S. at 654 (citing *Carpenter*, 484 U.S. at 27).

Van Dyke could not have embezzled the money or property of his Polymarket counterparties to whom he owed no duty and made no representations—false or otherwise. The government's non-convergence theory thus departs from any proper understanding of what constitutes fraud. It flies directly in the face of this Supreme Court and Second Circuit precedent that is directly on point and that has governed misappropriation cases for more than 40 years.

*Third*, the government's non-convergence theory would further violate the limits on fraud the Supreme Court imposed in *McNally* and *Skilling*. Under *McNally*, a "breach of fiduciary duty, without more, does not constitute fraud." *United States v. Mittelstaedt*, 31 F.3d 1208, 1219 (2d

---

[13] Relatedly, the intent to defraud element of wire fraud requires that the defendant "*contemplate*[] some actual harm or injury to their victims." *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006). That would be impossible vis-à-vis the Polymarket counterparties here, because the government does not allege they were injured or harmed in the relevant sense (by parting with money based on misrepresentations).

Cir. 1994). Under *Skilling* an employee's "undisclosed self-dealing" does not suffice. 561 U.S. 358, 409-10 (2010). The government's theory would allow prosecutors to "simply … recharacterize every breach of fiduciary duty" that results in profits to the defendant as property fraud, "let[ting] in through the back door the very prosecution theory that the Supreme Court tossed out the front." *United States v. Ochs*, 842 F.2d 515, 527 (1st Cir. 1988).

For example, a corporate officer violates his duty of loyalty to his principal if he takes advantage of a corporate opportunity. And failing to disclose resulting profits constitutes a material omission in breach of that duty. Under *McNally* and *Skilling*, that alone cannot constitute fraud. But under the government's new non-convergence theory, the material omission in breach of the officer's duty combined with the "money" obtained from the corporate opportunity (which is of course always the aim of diverting a corporate opportunity) would constitute fraud. That cannot be the law, as the Supreme Court has repeatedly held. Such a theory would "make[] a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law—in flat contradiction with [the Supreme Court's] caution" not to so interpret the statute. *Ciminelli v. United States*, 598 U.S. 306, 315-16 (2023).

*Fourth*, the government cites *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016). But that was not a misappropriation case; indeed, there it was obvious convergence was satisfied. The case involved a scheme to fraudulently use a retailer's customers' credit cards, followed by additional deceit to the card issuing banks to prevent chargebacks once the customers learned of the fraudulent transactions. When customers called the retailer to complain, the defendant dodged their calls. And when the issuing banks attempted chargebacks, he created false narratives to defend the false charges. The scheme was not merely designed to obtain the customers' money—it was also designed to obtain money from the issuing banks. That is a far cry from this case, where there is no dispute the Polymarket counterparties placed their bets independently and not based on any false pretenses or fraudulent inducement.

Independent of the above, the Supreme Court's recent decisions limiting the scope of fraud to its common law meaning (such as *Kelly*, *Ciminelli*, and *Kousisis*) render *Greenberg* outdated and overruled. *Greenberg*, for one, did not assess whether the common law required convergence. And the holding was never on firm footing to begin with. *See, e.g.*, *United States v. Evans*, 844 F.2d 36, 39 (2d Cir. 1988) ("the Supreme Court may have read the mail fraud statute" to require convergence and this "may be the correct view of the statute. If a scheme to defraud must involve the deceptive obtaining of property, the conclusion seems logical that the deceived party must lose some money or property."); *United States v. Novod*, 923 F.2d 970, 974 (2d Cir. 1991), *on reh'g*, 927 F.2d 726 (2d Cir. 1991) ("*Evans* contended in part that the property must belong to the deceived party...."). Thus, we submit the Court has an independent duty to consider whether *Greenberg* remains good law—it does not.

In addition to *Greenberg*, the government also cites instructions given in *United States v. Solomon*, No. 24 Cr. 665 (Apr. 21, 2026), and in *United States v. Peraire-Bueno*, No. 24 Cr. 293 (Nov. 3, 2025). The Court should not view these instructions as authoritative or persuasive. In *Solomon*, the defendant consented to the government's proposed language. *See* Tr.550 ("the Court's jury instructions, to which Mr. Toumbekis consented, literally say that one can seek to defraud a victim to get property from another."). *Peraire-Bueno* did not involve an analogous misappropriation scheme (or any non-convergence issue at all for that matter) and the defendants ultimately prevailed on Rule 29 motions.

*Finally*, the government's non-convergence theory fails for the separate reason that it evades the fraud statutes' "by means of" requirement. The statute requires the defendant to "obtain[] money or property *by means of* false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. That is a "*textual* limitation" on fraud's scope. *Loughrin v. United States*, 573 U.S. 351, 362 (2014). The phrase "demands that the defendant's false statement is the mechanism naturally inducing [the victim] to part with its money." *Id.* at 365. As discussed above, that requirement is not satisfied here because no misrepresentation was communicated to the Polymarket counterparties. "And in cases like [this one], where no false statement will ever go to [the betting Polymarket counterparty], the fraud is not the means of obtaining [the money at issue]." *Id.*; *see also United States v. Berroa*, 856 F.3d 141, 149-50 (1st Cir. 2017) (reversing fraud convictions because "defendants' alleged fraud in obtaining their medical licenses cannot be said to have 'naturally induc[ed]' healthcare consumers to part with their money"). "The Second Circuit has not addressed how close the relationship between the [false] statement and the receipt of property must be to satisfy *Loughrin*." *United States v. Martinez*, 2023 WL 2118081, at *3 (S.D.N.Y. Feb. 17, 2023). But here, it is undisputed there is no relationship whatsoever.

## VIII. <u>The Court Should Instruct on Willfulness for Count Four</u>

The Sand instructions for wire fraud, 2 *Modern Federal Jury Instructions-Criminal* P. 44.5, include an instruction on willfulness, and the Court should accordingly charge the jury. While it is true that the term willful does not appear in the wire fraud statute, judges in this District routinely deem willfulness to be a necessary component of the specific intent to defraud required under 18 U.S.C. § 1343.[14]

---

[14] *See, e.g.*, *United States v. Chastain*, No. 22 Cr. 305 (Apr. 25, 2023), Tr.916 (instructing on willfulness); *United States v. Kaloyeros,* No. 16 Cr. 776 (S.D.N.Y. July 24, 2018) (Caproni, J.), ECF No. 821, at Tr.2886 ("'Willfully' means to act knowingly and purposely, with an intent to do something the law forbids, that is to say, with a bad purpose either to disobey or to disregard the law."); *United States v. Blaszczak,* No. 17 Cr. 357 (S.D.N.Y. May 16, 2018) (Kaplan, J.), ECF No. Tr.3946-3947, 3970 (incorporating wire fraud instruction by reference: "To act willfully means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids; that is to say, with the bad purpose to disobey or disregard the law."); *United States v. Jones*, No. 16 Cr. 553 (S.D.N.Y. Mar. 13, 2018) (Nathan, J.), ECF No. 125, at 22 ("'Willfully' means to act knowingly and purposely, with an intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law, although the defendant need not know the specific law he is violating."); *United States v. Campos*, No. 16-cr-395 (S.D.N.Y. July 20, 2017) (Caproni, J), ECF No. 140, at Tr.1367 ("To act willfully means to act deliberately and with a purpose to do something the law forbids."); *United States v. Afriyie*, No. 16 Cr. 377 (S.D.N.Y. Feb. 2, 2017) (Engelmayer, J.), ECF 83, at 23, 27-28 (incorporating wire fraud instruction by reference: "To act willfully means to act with an intention to do something that the law forbids; that is to say, with a bad purpose either to disobey or disregard the law."); *United States v. Parlante et al.*, No. 12 Cr. 725 (S.D.N.Y. Oct. 22, 2013) (Wood, J.), ECF No. 139, at Tr.1860, 1882 (incorporating wire fraud instruction by reference: "'Willfully' means to act knowingly and purposely with an intent to do something the law forbids. That is to say, with a bad purpose, either to disobey or disregard the law.").

Several other circuits also include the term "willfully" in their delineation of the elements of wire fraud. *See, e.g., United States v. Kerley*, 784 F.3d 327, 343 (6th Cir. 2015) (first of three elements of wire fraud is that "the defendant devised or willfully participated in a scheme to defraud"); *United States v. Denson*, 689 F.3d 21, 24 (1st Cir. 2012) ("The parties … agree that the elements of wire fraud are a 'scheme to defraud,' the accused's 'knowing and willful participation in the scheme with the intent to defraud,' and the use of interstate or foreign 'wire communications' to further that scheme."); *United States v. Al Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004) (first and second elements of wire fraud are "(1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud").

## IX. The Court Should Not Give the "No Ultimate Harm" Instruction for Count Four

Van Dyke objects to the government's proposed "no ultimate harm" instruction. *See* Gov. RTC #20. The instruction is inappropriate in this case as there will be no factual predicate for it at trial. As the government's own authority reveals, such an instruction requires a "sufficient factual predicate to necessitate the instruction." *United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016); Sand, *Modern Federal Jury Instructions*, Instr. 44-5 (noting instruction is only appropriate "if applicable").

The authorities the government cites as warranting the instruction each presented the requisite factual predicates—which are lacking here. For example, in *Bankman-Fried*, the defendant "testified at trial that he did not intend to harm FTX customers because he believed Alameda's assets were greater than its liabilities and that the money would eventually be repaid. Given this evidence, the instruction was proper." 179 F.4th 104, 117 (2d Cir. 2026). In *Lange*, there was evidence the co-conspirators "intended to immediately deprive investors of their capital through fraud, even if they truly believed that in the long-term HFGI and BSMI would ultimately succeed, deriving profits for the defrauded investors." 834 F.3d at 79. *Percoco* and *Ferguson* are similar. This case does not involve such facts, rendering any such instruction inappropriate here.

## X. Additional Objections

### A. Request No. 2

Mr. Van Dyke objects to the government's instruction on the indictment insofar as it omits context that it does not indicate guilt and should not be afforded any weight. If the jury will be provided a trial indictment—a hearsay document—such an instruction is necessary to prevent the jury from affording it evidentiary weight.

Mr. Van Dyke further objects to a description of the charges that commingles Counts Three and Four and mischaracterizes wire fraud as "insider trading" or as involving "misappropriating non-public information." Wire fraud is "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. The government's construction improperly implies the jury must find the defendant guilty on Count Four if it finds him guilty on Count Three.

### B. Request No. 5

Mr. Van Dyke objects to the language reading "a financial instrument—such as an event contract—" in the instruction regarding material information. Such language is overbroad and likely to confuse the jury. It should instead read, "a swap," because that is the only type of contract at issue in this case.

Mr. Van Dyke further objects to the government's unbalanced, one-sided instruction on nonpublic information. A fair instruction should provide the jury with an understanding that information may be considered public if it is available to members of the public, even if it is classified.

Mr. Van Dyke further objects to the language stating that the government must prove that "the defendant was aware of and in possession of the material nonpublic information at the time

he entered into the transaction." As explained above, the government must prove that Mr. Van Dyke traded *on the basis of* material, nonpublic information.

### C. **Request No. 6**

Mr. Van Dyke objects to the instruction that "The Government need not prove that the intent to defraud was the only intent or even the primary intent of the defendant. A defendant may have the requisite intent to defraud even if the defendant was motivated by other lawful, proper, or neutral purposes or reasons for his actions." A lawful purpose is synonymous with good faith, which is a complete defense.

Mr. Van Dyke further objects to the government's truncated version of the good faith instruction charged in *Garelick*. We note that the government cites to a draft charge, but that Judge Liman's final charge included a more robust explanation of good faith. Jury Charge in *United States v. Garelick*, No. 23 Cr. 307 (LJL) (S.D.N.Y. May 8, 2024) (ECF No. 174 at 1,566).

### D. **Request No. 18**

We object to the government's proposed language characterizing the property at issue as "specifically its confidential operational information used in military activities." This language is unfairly suggestive to the jury. The phrasing places a thumb on the scale in favor of the government by suggesting the information at issue is in fact "confidential operational information used in military activities," which is a factual conclusion the government must first prove. The Court should charge the jury consistent with Van Dyke's proposal on this element, stating only that the alleged scheme was "to defraud the United States Military of its Property," without additional suggestive language or characterization of the alleged property.

We further object to the government's articulation of the first element of wire fraud, which is incomplete. The first element requires that the scheme or artifice to defraud be to obtain property "by means of" materially false and fraudulent pretenses, representations, or promises. *See* 2 Leonard B. Sand et al., Modern Federal Jury Instructions-Criminal ¶44.03. Van Dyke accordingly requests the Court charge this element consistent with Sand and Van Dyke's proposed charge.

We further object to the government's use of the language "in execution of that scheme" when articulating the third element of wire fraud. Van Dyke requests the formulation outlined in his proposed charge, that "in furtherance of the scheme," the defendant used or caused the use of an interstate or international wire.

### E. **Request No. 19**

We object to the government's proposed sentence: "'Fraud' is a general term that refers to depriving another of money or property by dishonest means, methods, or schemes." This is inconsistent with the guidance provided by the Second Circuit in *United States v. Chastain*. There, the court held that "instructions" permitting the jury to "return[] a guilty verdict based on a determination that [conduct] was dishonest" or inconsistent with "fundamental honesty" were too broad. 145 F.4th 282, 296 (2d Cir. 2025). The sentence is also unnecessary, unfairly suggestive, and paints fraud in an overbroad light.

Similarly, we object to the phrase "by deceit" in the next sentence: "Thus, a 'scheme or artifice to defraud' includes any plan, device, or course of action to obtain money or property **by deceit** or by means of false or fraudulent pretenses, representations, or promises." The latter clause in the sentence ("by means of false or fraudulent pretenses, representations, or promises") states the correct formulation, and deceit alone is not sufficient as a matter of law.

The government's proposed charge fails to define "false or fraudulent pretenses, representations, or promises," as Van Dyke proposed in his request. Dkt.59 at 22 ("A pretense, representation, or promise is false if it is untrue when made and was then known to be untrue by the person making it. A pretense, representation, or promise is fraudulent if it was falsely made with the intent to deceive."). The Court should instruct consistent with Van Dyke's proposal.

The government's language "[a]s is pertinent here, a 'scheme to defraud' includes the fraudulent embezzlement or misappropriation of property belonging to another," should read "fraudulent embezzlement or **fraudulent** misappropriation," for the avoidance of doubt.

We object to the government's sentence: "Misappropriation of confidential information is material if the disclosure of the misappropriation would be expected to influence or is capable of influencing the decision of a reasonable person." Materiality must be assessed from the perspective of the victim. As *Kousisis* explained, "materiality look[s] to the effect on the likely or actual behavior of the *recipient* of the alleged misrepresentation." *Kousisis*, 605 U.S. at 131 (cleaned up, emphasis added); *see also Neder v. United States*, 527 U.S. 1, 16 (1999) ("a false statement is material if it has a natural tendency to influence … the decision of the decision-making body *to which it was addressed*.") (emphasis added).

The government's language "In addition, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated wrongly depriving another of money or property," should read "In addition, in order to establish a scheme to defraud, the government must prove that the alleged scheme contemplated wrongly depriving **the victim** of money or property." Fraud requires contemplating wrongly depriving "the victim" of money or property. Dkt.59 at 22 ("the government must prove that the alleged scheme contemplated wrongly depriving the victim of property.").

We object to the language "It is not necessary for the Government to prove that a victim was actually defrauded, or that any victim suffered a financial loss, damages, injury, or was economically worse off," insofar as it includes the word "injury." "[F]raud require[s] proof that the victim was injured." *Kousisis*, 605 U.S. at 128 n.5.

### F. Request No. 20

For the same reasons stated above in our objections to Request No. 6, Mr. Van Dyke objects to the instruction that "The Government need not prove that the intent to defraud was the only intent or even the primary intent of the defendant. A defendant may have the requisite intent to defraud even if the defendant was motivated by other lawful, proper, or neutral purposes or reasons for his actions."

**G. <u>Request No. 21</u>**

We object to the sentence "This wire communication requirement is satisfied even if the wire communication was done by a person with no knowledge of the fraudulent scheme, including a victim of the alleged fraud." The language in the government's proposal that follows is sufficient to properly instruct the jury and this additional (unbalanced) language is unnecessary.

**H. <u>Request No. 25</u>**

The government's description of the third element of Count Five does not instruct the jury—as is required—that it must prove the property at issue was obtained specifically from the alleged wire fraud offense charged in Count Four (this is what the indictment alleges). Van Dyke requests that the Court instruct, consistent with the indictment and his proposed charge, that "the government has alleged that the property in question was money obtained from the alleged wire fraud offense charged in Count Four. You must therefore determine beyond a reasonable doubt whether that offense occurred and whether the funds at issue were the proceeds of such an offense, if it occurred." Dkt.59 at 27; *see, e.g.*, *United States v. Chastain*, No. 22 Cr. 305 (Apr. 25, 2023), Tr.922.

**I. <u>Request No. 26</u>**

In charging the jury on venue, the Court should further instruct to clarify, consistent with Second Circuit precedent, that "[t]o satisfy the venue requirement, the government must prove that some act constituting the essential conduct of the charged offense occurred in this District," that "[p]urely ministerial functions and preparatory acts occurring in the district, however, are insufficient," and that "[t]he government must prove that the criminal conduct bore substantial contacts with the Southern District of New York." Dkt.59 at 31 (citing *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005); *United States v. Royer*, 549 F.3d 886, 896 (2d Cir. 2008); *United States v. Calonge*, 74 F.4th 31, 35 (2d Cir. 2023); *United States v. Kirk Tang Yuk*, 885 F.3d 57, 70 (2d Cir. 2018)).

In the final sentence of the government's proposed venue charge, Van Dyke objects to the word "simply" as an unbalanced and unfairly suggestive characterization of the burden of proof.

**J. <u>Request No. 27</u>**

The defense objects to the inclusion of a conscious avoidance instruction as irrelevant to any theory charged in this case, where the defendant is alleged to have acted alone, without co-schemers or coconspirators. However, if the Court decides to include a conscious avoidance instruction, Mr. Van Dyke reserves the right to submit his own request to charge.

**K. <u>Request No. 28</u>**

The defense reserves the right to object to the government's instruction on other acts evidence depending on the Court's ruling on the government's proposed 404(b) evidence.

**L. Request No. 29**

The defense objects to the government's request for a general "variance in dates and amounts" instruction. The government bears the burden to prove beyond a reasonable doubt the charges contained in the indictment, which specifically identify the "trade dates" and "transactions" at issue.

**M. Request No. 30**

The defense objects to the government's expert witness instruction, including repeated references to "expert," and requests that the Court instead use the instruction from Sand, 1 Modern Federal Jury Instructions-Criminal P 7.01, 7-21 Expert Witness.

**N. Request No. 31**

The defense objects to the government's proposed government employee instruction and requests that the Court adapt the instruction from Sand, 1 Modern Federal Jury Instructions-Criminal P 7.01, 7-16 Law Enforcement Witness, which includes the sentence, "At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case."

**O. Request No. 34**

Because no one else is alleged to have committed a crime in this case, the defense objects to an instruction regarding individuals not on trial.

**P. Request No. 37**

The defense objects to the government's proposed instruction on particular investigative techniques and requests insertion of the following instruction after the first sentence: "You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty." *See* Sand, 1 Modern Federal Jury Instructions-Criminal P 4.01, 4-4 Specific Investigation Techniques Not Required.

**Q. Request No. 41**

To the extent that transcripts of audio recordings are presented to the jury in this case, the defense objects to the government's proposed instruction and asks that the Court instead adopt the Third Circuit's pattern instruction. *See* Third Cir. Model Crim. J. Instrs. § 4.06.

**R. Request No. 42**

The defense reserves the right to object to the government's instruction on redactions depending on the Court's ruling on the government's proposed 404(b) evidence.

**S. General Objection**

As stated above, Mr. Van Dyke reserves the right to object to the inclusion of other charges depending on the evidence admitted at trial.

Respectfully submitted,

Teny Geragos, Esq.
Zach Intrater, Esq.
Jason Driscoll, Esq.
Daniela Manzi, Esq.
AGNIFILO INTRATER LLP

/s/

Mark J. Geragos, Esq.
Deanna Paul, Esq.
GERAGOS & GERAGOS P.C.